GEORGE A. GARDINER, *Plaintiff in Error*,

*vs.*

LUTHER TISDALE, FRANCIS A. TONDRO & BEN-
- JAMIN BROWN, *Defendants in Error*.

ERROR TO ROCK COUNTY CIRCUIT COURT.

In an action of ejectment, though the defendant set up no title in himself, it
is competent for him to assail the title of the plaintiff; and the latter must
recover, if at all, upon the strength of his own title, and not on the weak-
ness of that of the defendant.

Where the legislature has prescribed the manner and formalities by which the
title to lands may be transferred from the proprietor of a town site, and
secured for public uses, a compliance with the requirements so prescribed,
is essential to divest the proprietor of the original title, and to vest the
same in the public or the constituted authorities.

Where certain lands had been surveyed, laid out, and platted as a town site,
and a map thereof had been made, designating streets, squares, public land-
ing, lots and blocks, and left for record in the office of the register
of deeds, but no certificate of the acknowledgment thereof was en-
dorsed on such map, (as shown by the record,) in accordance with the
statute of 1839, the title to the land covered by such streets, public land-
ings, &c., was not thereby transferred from the original proprietor.

To pass the title, a map or plat should be made, and acknowledged before the
proper officer, and a certificate of such acknowledgment endorsed on the
map, all of which should be recorded. In other words, the statute pre-
scribing a new mode of conveyance, should be strictly complied with.

The owner of land may dedicate the same to the public use by parol, and by
acts which show a deliberate appropriation of the land by the owner to the
public use, reserving to himself no other rights in the soil than such as are
perfectly consistent with the full enjoyment of the public use, to which it is
intended to be devoted.

The power over land, parted with by the owner, and acquired by the public by
dedication of a public landing, is but an easement, or right of transit, no
greater than that of a highway, and may be supported upon the same prin-
ciple. It confers no right to a permanent occupation of the soil.

The question of dedication is one of fact, to be submitted to the jury upon
the circumstances of each particular case, and there should be shown on the
part of the owner an intention to appropriate the land to the particular use
claimed, and an actual appropriation.

In a country like ours, where roads and other public conveniences are permit-
ted on wild or unoccupied lands, *mere user* ought not to be evidence of a

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

dedication. An actual appropriation by the owner should be shown, and the particular intention and purposes of the dedicator ought to be manifest. The easement which the public may acquire by dedication, such as a highway, &c., may perfectly consist with the right of soil remaining in the owner or dedicator, and when the use or enjoyment of such easement is relinquished, or abandoned, or becomes impracticable, the property, with all its incidents and appurtenances, will revert to the owner or his proper representatives.

Or, if there be a *non user* by the public for such a length of time as to afford evidence of a discontinuance or abandonment of the easement, the whole estate will revert in like manner, and the title to the soil will be released from such easement.

The original owner, or those claiming under him, of land dedicated to public use, may maintain ejectment against a permanent incumbrance or occupier, inconsistent with, or repugnant to, the purpose of the dedication or grant.

In an action of ejectment, it is no defence for a permanent incumbrancer or occupier to set up a dedication or grant of a public easement on the part of the owner, or his grantors, of the fee of the soil.

This was an action of ejectment, commenced by the plaintiff in error against Tisdale & Tondro, to recover a part of the southeast fractional quarter of fractional section 35, town one, range twelve, particularly described in the declaration as follows: being a building now occupied by defendants as a grocery, and the land on which it is situated, bounded on the west by a meat market occupied by Phillip Lovell; and on the east side by a certain building recently occupied by Wm. Talbot; being on the south side of the highway leading on to the east end of the bridge over Rock River, in Beloit.

The declaration, with notice in due form, was served on the 26th day of November, 1852. Declaration filed, and order to plead entered the 1st day of December, 1852. Tisdale & Tondro did not plead, and their default was duly entered. At the March term of said court, 1853, Benjamin Brown, claiming to be landlord of Tisdale & Tondro, and owner of the premises, was admitted to defend, and pleaded the general issue. At the September term, 1853, the issue

was brought on to be tried, Hon. Wyman Spooner,

judge of said court, presiding. The plaintiff introduced in evidence a patent from the United States to R. P. Crane, dated the 9th of May, 1842, conveying lot 6 and 7 of the southeast fractional quarter of fractional section 35, town 1, range 12. The plaintiff also introduced in evidence a quit-claim deed in the common form, from said Crane and wife to himself, dated the 2d of September, 1852, by which said deed the said Crane conveyed to plaintiff parts of lots 6 and 7, in the S. E. fr. qr. of fr. sec. 35, T. 1, R. 12, described, "Beginning on the bank of the river, at low water mark, on the north line of block 58, and running east on said line to the center of Turtle street; thence northerly up the center of said street, as the same was laid out, to the center of the street called Public Avenue; thence northerly to the south line of block 46; thence west on said line to the river at low water mark; thence down the river as it runs, to the place of beginning, being in Beloit, Rock county, Wisconsin." The plaintiff proved that the land described in the deed was part of the land described in the said patent; that the land described in the declaration was part of the land described in the deed; that the defendants Tisdale & Tondro were in possession of the premises in question at the time this action was commenced, as tenants of Benjamin Brown, who claimed title thereto; and that Benjamin Brown built the building on the land in question. The plaintiff then rested.

The defendant proved, all under objection and exception, that John Hopkins, in 1840, at the request of R. P. Crane and others, made a survey of the village of Beloit; that is to say, of the land on which Beloit

Dec. Term 1853.

now stands; that the said Hopkins was then county surveyor.

Gardiner
vs.
Tisdale et al.

A paper was here shown to the witness and his attention directed to a certificate at the end of it, and he stated that the certificate was in his hand writing; that the paper contained the minutes of survey made at the time; that he saw Crane sign it, and that the whole was in his hand writing; that he at the time made a map of the survey; that at the time the certificate was made, the map was present; that the map and paper (survey) were one paper necessarily; they could not have formed a complete transaction without being together. That he knew a piece of land in Beloit called " Public Landing ;" that this land known as the public landing, was within the limits of the survey made by the witness; that when the paper (the survey) was completed, and the map made, they were left with the proprietors, and witness never saw them afterwards.

The witness further testified that he was employed by Horace White to make the survey, and that White paid him for it; that Crane neither employed him nor paid him; that he could not say that the survey and the map were attached together, by wafer, string or otherwise, when the certificate was made.

The defendant also called as a witness George Williston, who was register of deeds of Rock county, from 1842 to 1847, and who testified that Bailey was his predecessor in office. A portfolio book was presented to the witness, and he said "that was the book kept by him for recording town plats, and that it was in the office when he took possession." The witness further testified as to the condition of the portfolio book when he delivered it over to his successor; to

which the plaintiff objected, that the record must
prove itself, and could not be aided by parol, and that
parol evidence could not be given to prove that the
loose sheets (maps of Beloit) were ever attached to
the book of records; but the objection was over-
ruled, and the witness said "that these leaves, now
loose, (being maps of Beloit) were, when the book
was in my hands, attached to it." Copies of minutes
of survey, and of a former survey of the village of
Beloit, made by one Doolittle, were shown to the wit-
ness, and against the objection of the plaintiff, he was
permitted to testify "that these minutes of survey
were received by me, as register, of my predecessor.
I kept them between the lids of that portfolio book.
They were not in any way attached to the book.
Bailey was register the 10th of August, 1840, and
24th of September, 1839."

The defendant called all the other registers suc-
ceeding Williston, to the present time, who gave the
same testimony, (against the same objections of plain-
tiff,) except that in 1849 and 1850, the minutes of
survey were kept in a table drawer, and not in the
book.

The defendant then offered in evidence the said
portfolio book of records of maps, and the loose
sheets purporting to be maps of Beloit, not attached
in any way to the book; also, copies of the field notes
or survey minutes of one Doolittle, in the hand writ-
ing of Bailey, former register, on one sheet of fools-
cap paper. The following is an extract:

"A survey of the town of Beloit, including the S·
E. and N. E. fractional qr. of sec. 35, town one, N. of
range 12 E., and that part of sec. 36 represented on
the map. Beginning at the northwest corner of B.

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

70, at a post and stone. B. 48 N. side, 6.88 ch., E. side 3.99 ch., S. side, 7.69 ch., W. side, 3.93 ch. Broad street one hundred feet broad. B. 49 N. side 8 ch.

"I certify that the above map and notes of the survey are true and correct, according to the best of my knowledge and judgment.

> "A. W. DOOLITTLE,
> "*Surveyor of Racine Co., W. T.*
"*Beloit, March*, 1839.

"Received for record September 25th, 1839.
> "W. H. H. BAILEY, *Register.*"

In the above survey there is no mention of "public landing," or description or survey of it. The Hopkins minutes of survey, in the hand-writing of W. H. H. Bailey, were on nine half sheets of common foolscap paper, tied together at the top with tape. The following extracts from the same are deemed sufficient:

"Survey of the village of Beloit, in Rock county, Wisconsin Territory, made in the month of June, eighteen hundred and forty. Courses given according to the true meridian; variation of the compass, six and a half degrees.

"The survey begins at the State and Territorial line, at the corner of section thirty-five and thirty-six of town one north, in range twelve east, of the fourth principal meridian; thence bearing north one and three-fourths degrees east to the quarter stake between said sections. On this course it is eight chains and one link to the south side of Race street, one chain and one link across said street, three chains and ninety-four links across block fifty, one chain and forty-eight links across Broad street, three chains and

ninety-five links across block fifty-six, one chain and Dec. Term 1853.
twenty-one links across School street."

Then follow descriptions of streets and blocks. Gardiner vs. Tisdale et al.
Block fifty-four is thus described :

"Block fifty-four is bounded and described as fol-
lows : It begins at a point south 88 1-4 deg. east five
chains and twenty-six links from the center of the
east line of block fifty-three ; from this point its south
line bears S. 88 1-4 deg. east to center of Turtle street;
beginning again at the beginning of the last line, the
line bears north one and a half degrees east, five
chains and eighty-one links ; thence north 83 1-4 de-
grees east, five chains ; thence north seven degrees
east, five chains ; thence north seventy-one and
a half degrees east, six chains and thirty-five links to
the east line of the village plat; thence south one
and a half degrees west to the center of Turtle street;
thence down the same the several courses thereof to
where the line from the first point eastward shall in
tersect it, *which last mentioned block fifty-four is known
and designated as land reserved for hydraulic purpo-
ses.*"

The public squares are thus described :

"The public square lies between College and Main
streets and School and First streets. Mechanics'
Green lies west of block fifty-four, east of Mechanics'
street and south of block eleven. The land lying be-
tween block fifty-four and First street, and Canal street
and east of the east line of the village plat, *is also
reserved for hydraulic purposes.*"

Block 59 is thus described :

"Block fifty-nine is five chains and eighty links on
Turtle street, six chains and three links on Broad
street, three chains and 22 links on Mill street, two

chains and ninety links north along *Public Landing*, and lies on the river."

(This is the only instance in which the words "*Public Landing*" occur in this whole survey.)

" I hereby certify that the foregoing survey, description and plat of the village of Beloit, Rock county, W. T., is correct, according to the best of my knowlege and belief.

" *Beloit, July* 28, 1840.

" JOHN HOPKINS, *County Surveyor.*"

"The undersigned, owners and proprietors of the land in the foregoing survey, plat, and description of the village of Beloit, in Rock county, W. T., hereby certify that we have caused the same to be surveyed, platted and described in the foregoing manner, and and have done the same in good faith, and believe it to be correct.

" *Beloit, July* 28, 1840.

| | |
|---|---|
| "R P. CRANE, | [L. S.] |
| " OTIS P. BICKNELL, | [L. S.] |
| " HORACE WHITE, | [L. S.] |

" In presence of

" SELVY KIDDER,

" HORACE HOBART."

" The undersigned, the original owners and proprietors of lots number five, six and seven, in section thirty-five, in town one, north of range twelve east of the fourth principal meridian, and of the west half of the northwest quarter of section thirty-six, in said town and range, hereby certify that we did cause a survey of a part of the village of Beloit to be made out of said described lands, by A. W. Doolittle, the description of which was returned in blocks only, and was dated March, 1839, and we have caused this additional sur-

vey into lots to be made now, on the same principle of Doolittle's survey; and all former and subsequent description of lots and blocks will, in our belief, be found explicit and correct by the plat and description hereby accompanied.

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

" Beloit, Rock county, July 28, 1840.

" R. P. Crane,    [L. S.]

" Otis P. Bicknell,    [L. S.]

" In presence of

  " Selvy Kidder,

  " Horace Hobart.

" Wisconsin Territory,  }
  " Rock County.     } ss :

" On the 6th day of August, 1840, personally appeared before me, Horace White, R. P. Crane, and Otis P. Bicknell, and acknowledged *the execution of the foregoing papers* to be their voluntary act, for the use and purpose therein mentioned.

" Horace Hobart, *Jus. Peace.*"

[This acknowledgment was not endorsed on the back of the map; but was appended to, or followed the certificate.]

The plaintiff objected to the introduction of the copies of said surveys, on the ground that they did not purport to be, and were not records; that by law the minutes of survey could not be recorded in the office of the register of deeds, consequently the pretended records thereof were not evidence; and that the evidence was immaterial and irrelevant. Objections overruled; plaintiff excepted.

To the introduction of the loose sheets, purporting to be maps of Beloit, the plaintiff objected, that the same did not purport to be, and were not records, or parts of a record; that they show that such maps as

Dec. Term 1853.

Gardiner vs. Tisdale et al. they purport to be copies of, could not by law have been recorded in the office of register of deeds, and consequently the pretended records could not be read in evidence; and because there is no record of the certificate of a surveyor, nor record of the certificate of acknowledgment by the persons or officers taking the same; and that the testimony was irrelevant. Objections all overruled; plaintiff excepted.

The defendant then offered to prove by a witness, that there was an agreement between Crane and others, in relation to the entry of the land on which the village of Beloit is laid out, and dividing it among them; and that the agreement was made before the land was entered. The witness stated that there was an agreement in writing; and the defendant then offered to show that other persons than Crane were interested in the land, at the time of the surveys made by Doolittle and Hopkins: to which the plaintiff objected, that in this action parol proof of the interest of other persons in the land could not be given; that the patent to Crane was conclusive of his title, and if he had conveyed any part of, or interest in the land to any other persons, that could not be shown by parol, and also that the evidence was irrelevant. The objection was overruled, and the witness went on to testify that Crane agreed to enter the land for the benefit of the New England Company, and others interested, but did not know whether he paid for it with his own money or not. That Crane and others agreed that the land should be platted, and that a rough plat was made before Crane entered the land; that it was agreed that when the plat was finished, there should be a division thereof among those interested, according to their interests; that those interest-

ed had many *meetings* about laying out the town, be-
fore the land was entered ; that at *these meetings* the
plan subsequently adopted was agreed upon before
the land was entered. The witness also stated that
the land called "Public Landing" had, since 1837,
been used mostly as a depository of lumber taken
from Rock river, a lumber yard, &c. At a *meeting*,
there was a division made, and the property platted.
Witness was present ; there was a memorandum then
made, showing how much each was to have. It was
divided by lots and blocks, according to the plat then
made. This was in 1838, after the land was entered,
but before Doolittle's or Hopkins' surveys. On the
plat at that time there was land designated as " Pub-
lic Landing."

On cross-examination, the witness states that he had
never known the land in controversy in this suit used
as a deposit for lumber, or for a landing place. It is
so situated that it could not be used for that purpose.

The defendant called another witness, Lucius G.
Fisher, who stated he had resided in Beloit since 1837 ;
and after the plaintiff had objected, his objections
been overruled, and he had excepted, witness stated
in substance that the money to enter this land with
was made up and furnished to Crane by different in-
dividuals ; he furnished some, Horace White some for
New England Company, and others the balance. The
witness also stated (after objections and exceptions by
the plaintiff) the nature and purpose of *the meetings*
held in Beloit in 1837 ; that Crane *attended;* seemed
*interested;* a plan was agreed to, and there was to be
a "*Public Landing*" left as public ground ; and the
uses to which this land had been put since 1836.

DEO. TERM
1853.

Gardiner
vs.
Tisdale et
al.

The witness was then cross-examined by the plaintiff, and the plaintiff offered to show by the witness that Rock river, between Janesville and Beloit, and between Beloit and Rockton in Illinois, was not capable of being navigated by steamboats, and had not been for the last five years. Defendant objected; objection sustained, and plaintiff excepted.

The defendant also offered in evidence an agreement signed by R. P. Crane, dated the day the land was entered, by which he agreed to convey it to different individuals in ten days. Objection was made, but overruled, and the evidence received.

The defendant then calls R. P. Crane, who testified, against the objection of the plaintiff, among other things, that the land called "Public Landing" was embraced in Doolittle's survey and plat; that he assented to the survey and plat; that it was within the limits of Hopkins' survey; that at the time of executing the deed to the plaintiff, he had conversation with the plaintiff about his (C.'s) title; he told plaintiff it had been designated as a public landing on a map. Plaintiff said his (C.'s) title to the public landing was good, and he would give something for it; told plaintiff he had deeded other parts of the village, by the plat, to sundry individuals.

The defendant also proved that the village property was divided according to the interests represented in the agreement of Crane to convey. The division was made according to the Doolittle survey; that Crane made conveyances of said interests to the persons named in the agreement, or according to their directions, and gave in evidence the record of some twenty-five deeds by Crane to sundry persons, describ-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

ing the lands conveyed, by lots and blocks, and referring to a recorded map for a particular description thereof.

To all of this evidence, objections were made seriatim, as the questions were propounded, or evidence offered; the objections overruled and exceptions taken. The testimony being closed, the defendant requested the court to charge the jury : " That the record testimony introduced by the defendant, was in compliance with the statute in force in Wisconsin Territory in 1839 and 1840, in relation to town plats ; and that the effect of said record testimony in law was, to pass the title to the land in controversy in this suit, from R. P. Crane, the plaintiff's grantor, previous to the deed from Crane and wife to the plaintiff, and that the defendant was entitled to a verdict ; which was given by the court, and to which the plaintiff excepted.

1st. The plaintiff requested the court to instruct the jury, that if they found from the testimony that the land in question was conveyed by the United States to Robert P. Crane, by patent, on the 9th day of May, 1842 ; and by said R. P. Crane and wife to the plaintiff, by common quit-claim deed, on the 2d day of September, 1852 ; and that the defendant was in possession of the premises at the time of this suit, the plaintiff was prima facie entiled to recover, which was given.

2d. The plaintiff also requested the court to charge the jury that if the plaintiff had established a prima facie case, according to the foregoing instruction, then the plaintiff was entitled to his verdict.

3d. That there was no evidence from which the said jury could find a grant of the land in controver-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.
sy in this suit, from R. P. Crane to any other person than the plaintiff.

4th. That if they found from the testimony that the plaintiff had made out a *prima facie* case, it was in law no defence to this action, that the said land in controversy in this suit had been dedicated to the public as a public highway, or as a public landing place from the river, *provided* they also found from the testimony that the defendant, before the commencement of this suit, built and occupied a tenement thereon, to the exclusion of all other persons.

5th. That if the defendant claimed to defeat the plaintiff's title to the land in controversy in this suit, by showing a dedication thereof by R. P. Crane to a public use, it was incumbent upon the defendant to show to what public use said land was dedicated ; and if they found from the testimony that said land could no longer be used for the purpose for which it was dedicated, then said land, and all the rights, privileges and appurtenances thereof, reverted to said Crane, or his grantee or assignee.

6th. That to establish a dedication of the land in question by R. P. Crane, to any public use, so as to prevent his subsequently resuming the exclusive use of said land, it must be shown that other persons had become interested in adjacent lands, in consequence of the inducement held out to them by said Crane that said land was to remain to such public use, who would be injured if said land should be reclaimed, and exclusively occupied by said Crane or any other person ; or that at the time said Crane sold other lands adjacent thereto, he received enhanced prices for such lands so sold, in consequence of such inducement ; or that other persons had embarked in enterprises or

made investment which would be rendered less pro- <sup>DEC. TERM 1853.</sup> ductive or valuable if the land in question should be occupied by said Crane or any other person; and that <sup>Gardiner vs.</sup> the mere fact that said Crane might have represented <sup>Tisdale et al.</sup> said land on a map or plat as public ground, was not of itself sufficient to establish a dedication of said land to the public for such public use.

7th. That the owner of land cannot by parol dedicate the same to the public, to use as a public landing, for the landing and deposit of lumber or other merchandise from the river.

8th. That a right to land lumber or other merchandise from a river, and deposit the same upon the land of another, *is an interest and profit in such- land* that cannot be enjoyed by the public at large, and is not capable of being dedicated to the public, as land may be dedicated to be used as a highway.

9th. That if they found from the testimony that R. P. Crane entered or pre-empted the land in question, in his own name, at the land office of the United States, but for the benefit of other persons, and agreed to convey the same to them, and not having done so, did convey said land to the plaintiff, yet these facts will form, and be no objection to, the right of the plaintiff to recover in this action.

All of which instructions asked by the plaintiff, except the first, were refused by the court, and exceptions taken. The jury found for the defendant, who had judgment accordingly, and the plaintiff brings his writ of error.

*M. H. Carpenter*, for plaintiff in error.

I. The court below erred in receiving as evidence

the pretended record of maps of Beloit, and charging the jury as requested by the defendants, that they were sufficient in law to pass the fee of the land in question from R. P. Crane. *Vide Old Stat., p.* 159.

Sections 1, 2 and 3 of the act referred to, specify how the map shall be made. Section 4 provides "that the map, after having been completed, shall be certified by the surveyor," and the proprietor "shall, at or before the time of offering such map for record, acknowledge the same before any person authorized to take the acknowledgment of deeds. *A certificate of such acknowledgment* shall, by the officer taking the same, *be endorsed on the map,* which certificate of the survey and acknowledgment shall also be recorded, *and form a part of the record.*" Section 5 provides that "when the map shall have been made out, *certied, acknowledged and recorded, as required by this act,*" it shall be deemed evidence of a grant to the public, or individuals, &c., " and the land intended to be for the streets, alleys, ways, commons, or other public uses, in any town or city, shall be held in the corporate name thereof, in trust to and for the uses and purposes set forth and expressed, or intended."

This statute points out what is to be done by the proprietor to effect a grant, and it is quite certain the statute must be substantially complied with, or no title will pass.

The case of *The People vs. Beaubien,* 2 *Doug.* (*Mich.*) 256, was decided under just such a statute, and the map was held void as evidence of a grant, because it had not been acknowledged, although the owner had deeded other lands by deeds duly acknowledged and recorded, and referring to said map as of record.

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

The maps said to have been made by the owners of the land in question, did not at all comply with the statute, if the pretended records thereof duly represent them. Neither of them "particularly described all the streets, alleys, commons, or public grounds, giving the names, widths, courses, boundaries and extent of all such streets and alleys," according to section 1. Neither of them designated a point or points where a monument might be found, according to section 3. Neither of them bore a certificate of the surveyor, according to section 4; nor did either of them show who was the surveyor, or whose land was surveyed; nor where it was situated; and there was no evidence on the trial, from the records or otherwise, that they had ever been seen by the owners of the land; and neither of them bore a *certificate of acknowledgment.* The certificate of acknowledgment must be on the map. *Montague vs. Smith,* 13 *Mass.* 396; *Saco vs. Hopkinton,* 29 *Maine R.* 279; *Thurman vs. Cameron,* 24 *Wend.* 92; *Hartwell vs. Hemmenway,* 7 *Pick.* 117; 2 *Burrill's Law Dic. title* "*Indorsements;*" *Pendleton vs. Butler,* 3 *Conn.* 412. Nor was any certificate of the surveyor or of the acknowledgment recorded with the maps, according to section four.

These maps not having been made out according to the statute, certified and acknowledged, were not entitled to registration, and the pretended record thereof is a nullity. *Vide Isham Ad. vs. Bennington Iron Co.,* 19 *Vt.* 130, 235; *Pridge vs. Tyler,* 4 *Mass.* 541; *Greenl. Ed. of Cruise,* note to chap. 29, title 32, sec. 26; *Troop vs. Haight,* 1 *Hopk.* 61; *Frost vs. Beakman,* 1 *J. Ch.* 300; *Carter vs. Champion,* 3

*Conn.* 549 ; *Herndon vs. Kimball,* 7 *Geo. R.* 432 ; *Papot vs. Gibson, id.* 530.

The certificates of Crane and others at the foot of the survey were not papers entitled to registration, (*Jackson vs. Richards,* 6 *Cow.* 617) nor were they in fact recorded.

A *deed* conveying land is valid as between the parties thereto, without being acknowledged or recorded, on the ground that the only object of registry is to give notice to subsequent purchasers. The making and delivery of the deed passes the title. But not so in a case like this. It is only after the map has been made out, *certified, acknowledged and recorded,* that it becomes evidence of a grant.

The plaintiff, by virtue of his quit-claim deed, was a subsequent purchaser (*Rev. Stat., p.* 326, *sec.* 3), and the record of a DEED from his grantor, thus defectively executed, would not have been notice to him. *Vide Troop vs. Haight, Frost vs. Beakman, Carter vs. Champion, cited above ; Latouche vs. Gunsan,* 1 *Shoales & Le Froy's Rep.* 157 ; *Sugden on Vendors,* 527 ; *Stephens vs. Brown,* 3 *Vt.* 420 ; *Montgomery vs. Dorion,* 6 *N. H.* 250, 255 ; *McNeil vs. Magie,* 5 *Mason,* 265 ; 1 *Story's Eq. Jur., sec.* 494 ; *Astor vs. Wells,* 4 *Wheat.* 466 ; *Morecock vs. Dickens, Ambler Rep.* 678 ; *James vs. Morey,* 2 *Cow.* 246, 296 ; *Blood vs. Blood,* 23 *Pick.* 80. The record of a deed, in all respects formally executed, if it admit the certificate of acknowledgment, is no notice to a subsequent purchaser. *Bellas vs. McCarty,* 10 *Watts,* 13 ; *Skinner et al. vs. McDaniels et al.,* 5 *Vt.* 539.

II. The evidence tending to show a dedication of the land in question to a public use, was improperly admitted ; such dedication, if established, being no

answer to an action of ejectment against a permanent incumbrancer. *Vide Goodtitle ex dem. Chester v. Al-* *ker et al.,* 1 *Burr,* 133 ; *Cro. Jac.* 21, 150 ; 2 *Bac. Abr.* 170 ; 4 *vol. Am. Ed. Bac. Abr., Title "Highway,"* (B.) ; 3 *Com. Dig.* 27, *Title " Chemin,"* (2 *A.*) ; 3 *Kent's Com.* 432 ; 2 *Smith's Lead. Cases,* 183–4 ; *Hancock et al. vs. Wentworth,* 5 *Met.* 446 ; *Cooper et al. vs. Smith,* 9 *Serg. & Rawle,* 26 ; *Allen vs. Murdock,* 13 *Mass.* 256 ; *Billing vs. The Mayor of Petersburg,* 3 *Randolph,* 563 ; *Thompson et al. vs. The Proprietors of the Androscoggin Bridge,* 5 *Greenl.* 62 ; *Pomeroy vs. Mills,* 3 *Vt.* 279 ; *Wooster vs. Butler,* 13 *Conn.* 309. In all the above cases this point was dirertly in judgment. Vide also the *dicta of Sedgwick J. in Com. v. Peters,* 2 *Mass.* 125 ; *Parsons, C. J., in Perley vs. Chandler,* 6 *Mass.* 454–6 ; *Putnam, C. J., in Stackpole vs. Healey,* 16 *Mass.* 33 ; *Platt, J., in Jackson vs. Hathaway,* 15 *J. R.* 447 ; *Cowen, J., in Pearsall vs. Post,* 20 *Wend.* 111, 126.

A majority of the court of Connecticut tried to establish a different doctrine ; *Stiles vs. Curtis,* 4 *Day,* 318 ; and *Peck vs. Smith,* 1 *Conn.* 103 ; but have given up in despair. The case of *Wooster vs. Butler,* 13 *Conn.* 309, virtually overrules the other cases, and Connecticut has *fallen into line* with the other States upon this subject.

The owner of land over which a highway has been established, may maintain trespass for an injury to the soil, herbage, shade trees, &c. *Perley vs. Chandler,* 6 *Mass.* 453 ; *Stackpole et al. vs. Healey,* 16 *Mass.* 32 ; *Cortelyou vs. Van Brunt,* 2 *J.* 357 ; *Gidney vs. Earle,* 12 *Wend.* 98 ; *Avery vs. Maxwell,* 4 *N. H.* 36. The point is conceded by the judge in the question under consideration.

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

Now if to maintain trespass, possession and right of possession are indispensable, and the owner of land over which a highway has been established may maintain trespass for an injury affecting such land, does it not follow by logical deduction, that the owner of land over which a highway has been established, is entitled to the possession of such land?

But it is said, " the plaintiff cannot have the *exclusive possession* delivered to him by this action, for that would be inconsistent with the public right."

We apprehend this is a great mistake. The public have no right to the possession of such land ; *Babcock vs. Lamb et al.*, 1 *Com. Dig.*, *Title* " *Trespass*," (B· 3) ; *Stock vs. Booth*, 1 *T. R.* 428–30 ; *Gidney vs· Earle*, 12 *Wend.* 98. The establishing of a highway over land does not disseize the owner, and the existence of such highway is not a breach of the covenant of seizin. *Whitbeck vs. Cook*, 15 *J. R.* 483. The public have only an incorporeal hereditament, and of that there can be no seizin, and ejectment will not lie to recover it. *Judd vs. Leonard*, 1 *Chip. Vt.* 204 ; *Black vs. Hepburn*, 2 *Yeates*, 331 ; *Den vs. Craig*, 3 *Greene*, (*N. J.*) 191 ; *Kenenge vs. Elliotte*, 9 *Watts*, 258. Trespass *quare clausum fregit* cannot be maintained by one who has an incorporeal hereditament in the lands of another, for an injury to such lands affecting such hereditament. *Baer vs. Martin*, 8 *Blk.* 317. But admitting the proposition would not move us from our position. It is not indispensable to maintain ejectment, that the plaintiff should be entitled to the *exclusive* possession. A tenant in common may maintain ejectment against a stranger, and yet he is not entitled to the *exclusive* possession. His co-tenant is equally entitled. A tenant in common may maintain

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

ejectment against his co-tenant if disseized by him, yet he is not entitled to the exclusive possession *as against the defendant, even.* *White vs. Sayre,* 2 *Ham.* 110; *Adams vs. Emerson,* 6 *Pick.* 56; *Goodtitle vs. Alker,* 1 *Burr,* 133.

III. A right to land lumber or other merchandise from a river, and deposit the same upon the land of another, is an *interest and profit* in such land that cannot be enjoyed by the public at large, and is not capable of being dedicated to the public, as land may be dedicated to be used as a highway. *Vide Pearsall vs. Post,* 20 *Wend.* 111; and the following authorities cited and commented on by Cowen, J., in *Pearsall vs. Post:* 2 *H. Black.* 393; 4 *T. R.* 417; 3 *Ald. & Ellis,* 554; 4 *Pick.* 145–48; 1 *Yeates,* 169; 9 *Serg. & Rawle,* 26; 2 *J. R.* 357; 17 *Wend.* 9; 3 *Watts,* 219; 14 *S. & R.* 71; 5 *A. & E.* 758. The case of *Pearsall vs. Post* was affirmed in the Court of Errors, (22 *Wend.* 425.) *Vide also* 6 *Barber,* 265. In Maine the same doctrine has been established, (1 *Greenl.* 111; 31 *Maine,* 134.) The same in Rhode Island, (1 *R. I.* 106.)

We believe no adjudication can be found against this position. The case in 6 *Peters,* 498, was only the dedication of land for a highway. The fact that it was near a river does not alter the nature of the dedication, and that case is no authority against us. The Cincinnati case, and others upholding the dedication of a square, proceed upon the ground that a square is a highway. In *The State vs. Wilkinson,* 2 *Vt.* 480, which was an indictment for encumbering a public square, Prentiss, J., says "a highway, according to the common law, is a place in which all the people have a right to pass. A common street and public high-

Dec. Term
1853.

Gardinor
vs.
Tisdale et
al. way are the same, and any way, which is common to all the people, may be called a highway. A navigable river may be termed a common highway, and any obstruction to the passage upon it may be redressed by indictment. * * * * * *If a way is used for passing and re-passing, and is common to all the people, it is a highway, whether it is called a road, street, or public square.* The dedication of land for a burying ground rests upon different principles, and is watched over by the courts of chancery as a charitable and pious use.

IV. The objection to the evidence offered to prove that the land in question was known as "Public Landing," was well taken. The Old Revised Statutes, page 99, section 4, requires the county surveyor to "keep a correct and fair record of all surveys made by him or his deputies, in a book or books to be provided by the county commissioners for that purpose," a copy of which shall be furnished to any person requiring the same. The court permitted the defendant to prove by parol what the statute requires to be matter of record, without in any way accounting for the absence of the record. Even conceding, which we do not, that the survey contemplated by the act in relation to the laying out of towns, may be made by a private surveyor, yet, as this survey was in fact made by a county surveyor, the survey was matter of record, and should not have been proved by parol.

There are but two ways of proving matters of record; by producing the record itself, and by a certified copy. When the records are produced, no parol proof can be given concerning the same, except that they come from the proper repository. 1 *Greenl. Ev.* sec. 484; 13 *Serg. & Rawle,* 254. It was contended

in the circuit, and may be here, that the testimony

was proper to show a resulting trust in favor of those who furnished the purchase money, and that our Statute of Uses and Trusts, (*Rev. Stat. chap.* 57,) abolished the trust and invested the equitable owners with the legal estate.

If this be seriously insisted on, there are many answers to it.

1. None of the statutes of Great Britain are in force in Wisconsin. *Old Stat., p.* 407, *sec.* 8 ; *Const. of Wisconsin, Art.* 14, *sec.* 13. All trusts, therefore, were, until the passage of chap. 57 of the Revised Statutes, subject to and regulated by the principles of the common law, and so remain, except as our Statute of Uses and Trusts otherwise provides. This trust, if any there was, *resulted by operation of law.* 1 *Foster,* (*N. H.*) 107 ; 4 *N. H.* 337 ; and to such trusts our statute does not apply. Sec. 6 expressly exempts them from the effect of the statute. So the common law still controls, and the legal estate is sufficient to maintain this action even against a *cestui que trust.* 8 *J. R.* 380 ; 3 *id.* 422, *and cases cited; Adams on Eject.* 32 ; 8 *T. R.* 118 ; 2 *J. Cases,* 321 ; 9 *Cow.* 88 ; 4 *Wend.* 369 ; 2 *Greenl. Ev., sec.* 331.

2. The plaintiff in this action is a subsequent *bona fide* purchaser, without notice, and cannot be affected by this trust, even in a court of chancery. 1 *J. Ch.* 566, *and cases there cited;* 2 *Story's Eq. Jur. sec.* 977.

3. The contract was to convey, according to a division of land made in February, 1848. The testimony of L. G. Fisher, under exception 42, shows the land in question was not embraced in that division.

4. The plaintiff establishing a legal title, is entitled to recover against any but the *cestui que trust,* accord-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

ing to all the cases, and the defendant does not connect himself in any way with the equitable interest.

After the court had decided that the papers offered by the defendants were records, and they had been read, it was improper to prove by parol what the records had already established.

The fee remained in Crane if the land *had* been dedicated, and the easement was discharged, if it could no longer be enjoyed. 2 *Vt.* 480 ; 11 *Pick.* 193 ; 12 *Vt.* 15 ; 1 *Shep. Touchstone*, 121 *et seq.*

Dedication of land to a public use does not rest upon the presumption of a grant. Its sole basis is an estoppel *in pais* upon the owner of the fee, and it is of the essence of an estoppel *in pais*, that the party estopped has done an act or made an admission inconsistent with the claim asserted, and some other must have acted upon such admission that would be injured by allowing the claim asserted. *Hammond's Nisi Prius*, 193, *Am. Ed.* 1823 ; 6 *Peters*, 438 ; 19 *Conn.* 265 ; 19 *Pick.* 409 ; 3 *Vt.* 521–536.

*J. A. Sleeper*, for defendant in error.

I. There could be no objecton to proving by the witness that he did a particular act for any particular person or persons, even though the act itself is required to be made matter of record, and might be proved by the record, if one had been kept. The records might not prove for whom, or at whose request, the act was done.

II. The evidence sought to be obtained by answers to the questions, was proper to go to the jury. It was important for the defendants to show, if they could, that Crane had made a survey of the land in controversy, platted it into a town or village, and that the

survey and platting were made and done in pursu-
ance of the statute.   Hence, inasmuch as the certifi-
cate description of the survey was detached from the
map or plat, it was proper to show that they were
both made and executed at the same time, and did in
fact constitute one instrument.   A deed may be writ-
ten on two or more sheets of paper or parchment, the
signing and sealing are necessarily on the last sheet;
it clearly is competent to prove, that the two or more
sheets belong together and constitute one instrument,
one transaction; in other words, that the instrument
contained in or upon the two or more sheets, was the
one made, executed and delivered; and when thus
proved, the deed or instrument would be as valid
and effectual as if the sheets had in fact been tied to-
gether, sealed together, or otherwise attached.

III. The evidence in regard- to the portfolio book
was not improper; perhaps it was unnecessary, for inas-
much as the portfolio book was proved to be a book
kept in the office of the register of deeds of the
county of Rock, for the purpose of recording town
plats, that proof was undoubtedly sufficient to enti-
tle the defendants to read from it, to the jury, any of
the town plats contained in it, without accounting for
the dilapidated or torn condition of its leaves.

IV. The Circuit Court committed no error in per-
mitting the said portfolio book, the loose sheets pur-
porting to be maps of Beloit, though not in any way
attached to the portfolio book, the survey and certifi-
cate made by Doolittle, as well as the certificate and
survey of Hopkins, to be given in evidence to the
jury.   These were the acts of Crane, the grantor of
the plaintiff; and all his acts and declarations made
and done while the owner of the land, were proper to

M

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.
be given to the jury. Besides this, they were in fact, legal records kept in the register's office of the county of Rock, and as such, were notice to everybody of the disposition which Crane had made of the land in controversy.

V. The objection, that the register in recording the map, description of survey, certificate of surveyor, statement of proprietors, and certificate of acknowledgment, copied the plat or map on to large broad paper, suitable for that purpose, and the description of survey, certificate of surveyor, statement of proprietors, and certificate of acknowledgment, on foolscap paper, which he placed in the book, thereby making it a part thereof, will not be looked upon with great favor by the court.

Crane having acted in good faith, as he declares, in laying out the town, his intention cannot be defeated, and public or individual rights impaired or in any way affected by any act of the register, so as to enable him to reclaim the land which had been granted to a public use by him, he having done all required to be done by him to render the grant effectual. He could not record it, nor could he dictate to the register how he should perform his duties required by law.

VI. It was proper to give evidence and show the intent and purpose with which Crane made the plats and maps, survey and certificates, and how he had in all things acted in relation to this land on which Beloit is situated, and in particular the premises in question.

To show that at most he was a mere naked trustee, of a passive trust, holding, until the Revised Statutes executed it, for the benefit of his *cestui que trusts ;* and therefore could, in fact, convey nothing by his *quit-claim* deed to the plaintiff.

VII. The first charge of the court, given at the re-

quest of the defendant, was correct ; the record testimony introduced by the defendants did comply with the statute in force in Wisconsin Territory in 1839 and 1840, in relation to town plats, and of course the legal consequences resulting therefrom were exactly in accordance with the declaration of the court. *Vide Stat. Wis. Ter.* 160.

VIII. Although the plaintiff had made out a *prima facie* case, yet in this case he was not entitled to recover, because the defendants by their proof had established beyond controversy, that the plaintiff had no title in the premises, without which he could not recover, even though the defendants had no right or title whatever in the same.

He must recover on the strength of his own title, not upon the weakness of the defendant's title.

If the court should be of opinion that the survey and map were not made and executed in compliance with the statute, then it is contended that the acts of Crane constituted a grant of that land for the public use, to the public, and divested Crane of all title thereto. These acts were not unknown to the plaintiff when he took the quit-claim deed ; but he relied upon the want of compliance with the statute as the ground upon which he expected to take possession of this public landing, to the exclusion of the public, and regardless of the public right.

As authorities to sustain this second point, *vide City of Cincinnati vs. Lessees of White,* 6 *Peters,* 431 ; *Town of Pawlett vs. Clark,* 9 *Cranch,* 292 ; *McConnell vs. Trustees of the Town of Lexington,* 12 *Wheaton,* 582 ; *Barclay et al. vs. Howell's Lessee,* 6 *Peters,* 498 ; *The Mayor, Aldermen and Inhabitants of New*

*Orleans vs. The United States,* 10 *Peters,* 662. These cases fully sustain the position assumed.

But an additional reason why the plaintiff could not recover, which the proof clearly established, was, that when Crane entered the land, he did not purchase for himself, but for others exclusively, they furnishing the money for the purpose ; and to make the matter more clear, he executed and delivered the agreement referred to, and copied at length in the record.

He had executed that trust by conveying all the land to his *cestui que trusts,* or to others by their directions, except the streets, alleys, and commons, or public grounds, and those he had disposed of in exact accordance with their directions ; in fact, they acted themselves in the matter, and had placed the whole control of this property out of and beyond Crane's reach.

But even if any title remained in Crane to these lands, the Revised Statutes, chapter 57, have divested it, executed the trust, and the equitable title of the *cestui que trusts* has vested in them as a legal estate. *R. S.* 318, *chap.* 57, *sections 2, 3 and 4* ; *Matter of De Kay,* 4 *Paige R.* 403 ; *Chesney vs. Henry, id.* 345.

And the deed of Crane to plaintiff being a mere deed of release, conveying only the title which Crane had, which was nothing, the plaintiff obtained no right, title or interest therein. In any view, therefore, the rulings of the court on the trial, as well as the charge to the jury, was correct, and the verdict and judgment ought to be affirmed.

Where instructions are asked which are mere abstract propositions of law, but which have no application to the facts of the case in which they are requested to be given, the court should not give the in-

structions, even though as legal propositions they are correct. Nor should the court give an instruction, which, as a whole, would be improper, though parts of it might be correct.

All the instructions asked by the plaintiff are subject to one or the other of these objections, and for that reason, if for no other, were properly refused.

*By the Court,* CRAWFORD, J. On the trial of this cause in the Circuit Court, the plaintiff read in evidence a patent from the United States to Robert P. Crane, bearing date the 9th day of May, A. D. 1842, for certain lots or tracts of land, within which is embraced the particular land now in controversy. He also gave in evidence a quit-claim deed from Robert P. Crane and wife to himself (the plaintiff) for a portion of the lands described in the patent, and now contained within the limits of the village of Beloit, in Rock county, and proved that the lot and tenement described in the declaration, was a portion of the land so conveyed to him by Crane and wife, and that the defendant Brown built a house thereon, and claimed title thereto. It was admitted, that at the time of the commencement of this suit, the defendants, Tisdale and Tondro, were in possession of the premises in dispute as the tenants of Brown. Having by this evidence established a *prima facie* case, the plaintiff rested.

The defendants, Tisdale and Tondro, did not defend the action, and their default was duly entered; but the defendant Brown, who, as landlord claiming title, was admitted to defend, interposed a plea. The substance of the defence on the trial was, that R. P. Crane and others had, in the years 1839 and 1840,

Dec. Term 1853.

Gardiner
vs.
Tisdale et
al.

laid out and caused to be surveyed and platted, the town site of the present village of Beloit, which embraced the lands described in the above mentioned patent to Crane, as well as other lands, and that the premises in dispute constituted a part of what had been set apart and designated on the plat of said village, as a *public landing*, on the bank of Rock river, and within the tract patented to Crane, and that by the platting and laying out of said village under the laws of Wisconsin Territory then existing on the subject of recording town plats, the *fee simple* title to the streets, alleys and grounds laid off and set apart for public uses, was transferred from Crane and vested in the public, for the uses intended, so that the subsequent conveyance by Crane to the plaintiff, of a portion of the public landing, vested no title thereto in the plaintiff. It was also insisted by the defendant, that even if the proceedings in laying out, platting and recording the plat of the village of Beloit, were so irregular and defective as not to be a compliance with the law on that subject, and therefore insufficient to divest the title of Crane to this public landing, yet there was evidence of a *dedication* of the ground for that purpose, which was sufficient to render the subsequent deed of Crane to the plaintiff inoperative to vest any title.

The questions which have necessarily occupied our attention in this case, are presented by the nature of the defence urged on the trial. Although we can perceive no evidence of title to the premises in dispute, in the defendant Brown, yet, as in the action of ejectment, the plaintiff must recover, if a recovery may be had, on the strength of his own title, and not from the weakness or want of title of the defendant,

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

it was competent, in any legitimate manner, to assail or destroy the title of the plaintiff, and thereby prevent a judgment in his favor.

At the trial in the Circuit Court, the defendant's counsel requested the Judge to charge the jury "that the record testimony introduced by the defendant did comply with the Statute in force in Wisconsin Territory in 1839 and 1840, in relation to town plats, and that the effect of said record testimony in law, was to pass the title to the land in controversy in this suit from the said R. P. Crane, the plaintiff's grantor, previous to the deed from said Crane and wife to the plaintiff, and that the defendant was entitled to a verdict." This instruction was given by the court.

It appears from the bill of exceptions that a survey and plat of the village of Beloit was made by A. W. Doolittle, county surveyor of Racine county, in the month of March, 1839, which plat, with the minutes of the survey, were filed in the office of the register of deeds of Rock county, on the 24th day of September, A. D. 1839. This survey and plat designated only the blocks, without any subdivisions into lots, but the streets, squares, and the *public landing*, were delineated *on the map*. Afterwards, in the month of July, 1840, an additional survey of the village, by which the lots were designated, was made by John Hopkins, the county surveyor of Rock county, and the plat and minutes of this survey were filed for record in the office of the register of deeds, on the 10th day of August, A. D. 1840. It also appears that copies of these minutes of surveys and maps were offered and received in evidence, the minutes of the survey made by Doolittle being on a single sheet of foolscap paper, and those of the survey made by Hop-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.
kins, being on nine half sheets of foolscap paper, connected or fastened together by a piece of tape, in the ordinary manner. The record of the plats consisted of copies on loose sheets, kept in a "portfolio book," but not attached thereto. On neither of these plats does there seem to have been any acknowledgment of execution endorsed; but attached to the minutes of Hopkins' survey, and on the last half sheet of the paper, we find a certificate of a justice of the peace, that on the 6th day of August, A. D. 1840, Crane, White, and Bicknell, the proprietors of the lands contained within the survey, had appeared before the said justice of the peace, and "acknowledged the execution of the *foregoing* papers," &c.

The fourth section of the act of the Territorial Legislature, entitled "An act to provide for recording town plats," (*R. S. of Wis., p.* 159,) provides that "the plot, or map, after having been completed, shall be certified by the surveyor and the county commissioners, and every person or persons whose duty it may be to comply with the foregoing requisition, shall, at or before the time of offering such *plot or map* for record, acknowledge *the same* before any person authorized to take the acknowledgment of deeds. A certificate of such acknowledgment shall, by the officer taking the same, *be endorsed on the plot or map*, which certificate of the survey and acknowledgment shall also be recorded, and form a part of the record.

The fifth section provides that "*when the plot or map shall have been made out and certified, acknowledged and recorded*, as by this act required," every donation or grant to the public, &c., marked or noted as such on the plot or map, shall be deemed in law and in equity, a sufficient conveyance to vest the fee sim-

ple of all parcels of land so donated or granted, and  <sup></sup> shall be equivalent to a general warranty as against the donor or donors, for the purpose and use expressed and intended. This section also provides, that the land intended for streets, alleys, ways, commons, *or other public uses*, in any city or town, shall be held in the corporate name of such city or town, in trust, for the use and purpose expressed, set forth or ntended.

Dec. Term 1853.

Gardiner
*vs.*
Tisdale et
al.

It was competent for the legislature to prescribe the manner and formalities by which the title to lands of this kind might be transferred from the proprietor of a town site, and secured for public uses, and when they provided the manner in which such transfer should be accomplished, as they evidently have done by the sections above recited, a compliance with the requirements prescribed is just as essential in order that the original proprietor may be divested of title, as the execution of a deed of conveyance would be in the transfer of real estate from one person to another on a purchase.

Without enquiring whether these plats are prepared in accordance with the provisions of the first, second and third sections of the act, it is obvious from inspection of them, that *they* have not been acknowledged, and the certificate of acknowledgment endorsed on them, as the act requires, so as to effect by means of the recording &c., of the plats alone, a transfer of the title.

In the case of *the People vs. Beaubien*, 2 *Doug. Rep.* 256, which was on an indictment for obstructing a highway or street in Detroit, a question arose as to whether the making and recording of the plat of that portion of the city wherein the street was situate

had been in conformity with the statute of Michigan, relating to the recording of town plats, (*Rev. Stat. of Michigan*, 1827, *p.* 278.) It appeared that a map or plat of a certain addition to the city, within which the street obstructed was included, had been recorded by the city register, but the record contained no certificate of the acknowledgment of the map purporting to be endorsed thereon, or attached thereto. It was shown, however, that on several occasions thereafter, the defendant had conveyed portions of the property embraced in the plat, and had made reference in his deeds to this map, as having been *duly recorded.* In delivering the opinion of the court, Judge Goodwin says, among other things, " A map or plat was required, &c.; this was required to be acknowledged before one of the officers named in the act, and to be accompanied with a certificate of the acknowledgment under the hand and seal of the officer. The map, with the acknowledgment, was also required to be recorded. The mode of conveyance required by the statute was peculiar, and different from any other known to the law ; and upon obvious and familiar principles, to be operative to pass the title, a conveyance under the statute must have fully complied with its several requirements. It does not appear to have been acknowledged as required by the act, and is accompanied with no certificate of acknowledgment. The subsequent references to it, in deeds to individuals purchasers of lots, and the acknowledgments of those deeds to the grantees named in them, cannot supply the defect, or operate as an acknowledgment of the map, with the certificate, signed and sealed, required by the statute."

We think the decision of Judge Goodwin on this

point, is perfectly correct, and that in the case now
before us, it cannot be claimed that the statute has
been compiled with. There was no record evidence
that the maps had been acknowledged, and certificates
endorsed thereon, and it is needless to cite authorities
showing that parol evidence was inadequate to supply
the defect. The principle of law is too plain.

The next enquiry is whether, in the absence of a
compliance with the statute in the making acknowl-
edgment, and recording of the plats, which would
divest Crane of the title to the land in controversy,
the acts of Crane and the whole transaction do not
establish a *dedication* of this public landing to a
public use. The very able arguments of the counsel
in this case have greatly assisted us in the examination
of this question.

Perhaps as comprehensive and reasonable a defini-
tion of a dedication as can be found in the books, is
given by Senator Verplanck, in *Post vs. Pearsall,* 22
*Wend.* 472. He described it as " the deliberate ap-
propriation of land by its owner for *any general and
public uses,* reserving to himself no other rights in the
soil than such as are perfectly compatible with the
full exercise and enjoyment of the public uses to
which he has devoted his property."

When this *appropriation* is shown to have been
made by the acts and *parol* declarations of the owner,
and not by a deed, it would certainly seem to be con-
trary to the the Statute of Frauds, but if the principle
of *dedication,* as applicable to streets and highways,
may be extended to the case of a *public landing,*
there can be no doubt that the owner of land may,
by *parol,* dedicate it to a public use. Whether it is to
be considered as forming an exception in the operation

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

of the statute, originated from a regard to public neces-
sity, or depending on the doctrine of an *estoppel in pais,*
in favor of individual rights acquired with reference to
it, it is not important at the present time to enquire.
The principle is too firmly established by adjudica-
tions, to admit of discussion. The right ceded, crea-
ted, or declared by the owner of the soil, is certain-
ly *a use and power over land,* yet the courts hold it
to be an easement, to the creation of which a deed of
conveyance is not indispensable. Mr. Justice Cowen,
in speaking of this kind of right by dedication, in
*Pearsall vs. Post,* 20 *Wend.* 122, says, " Thus, though it
be of the nature of an incorporeal hereditament, and
indeed of all real estate, since the Statute of Frauds,
to pass by deed only, we find a most important ease-
ment, forming a plain and well established *exception.*
It stands entirely independent of all *grant, or pre-
sumption of grant.*"

But the counsel for the plaintiff in error has forci-
bly insisted that *dedication* cannot apply to a public
landing, because the right to discharge lumber and
merchandize from the river upon the land, and to de-
posit the same there, is *an interest and profit* in the
land, which is incapable of dedication and cannot be
enjoyed by the public. The phrase " public landing,"
as used in this case, conveys to our mind, the idea of
a piece of ground on the bank or margin of Rock
river, provided for the open and common use of all
persons in the debarkation of themselves or their
goods, but not a place to be permanently encumbered
with piles of lumber or other merchandize or goods,
any more than a public highway or street, because,
the benefits and accommodation to the public, which
were intended to be conferred, would be greatly af-

fected, if not wholly destroyed, by any such permanent encumbrance. And why should not a piece of ground adjoining, and bounded by a public stream, such as Rock river is at this point, be as much the subject of dedication to a public use and enjoyment, as a highway, street, or public square? If we rightly construe the precise power over the land, parted with by the owner, and acquired by the public, in a dedication of a public landing, it is but an easement or right of transit; it is no greater privilege in, or power over, the land of another, than that given by the dedication of a public highway, or street; and it may be supported on the same principle of public policy and convenience. The proprietor parts with no more right to the soil in the one case than in the other; he is entitled to the same remedies for injuries to his freehold in a public landing as in a public square; and whether we view the subject in its bearing upon the rights of the individual citizen, or upon the interests of the public, we are wholly unable to appreciate any reasons which may be urged in favor of the dedication of a street, that are not equally in favor of the application of the same principle to a public landing.

In the case of *Pearsall vs. Post*, 20 *Wend.* 111, the *locus* had been used for many years as a place for the landing and deposit of large quantities of manure brought from the city of New York, and in some instances an area of more than an acre was covered with the manure. From the year 1764 until the year 1800, it had . n used by the public for the loading an unloading vessels, and for the deposit of wood and o r property carried . an m the landing. Mr. Justice Cowen, in giving the opinion of the court, nearly exhausts the subject of dedication to

Dec. Term
1853.

Gardiner
*vs.*
Tisdale et
al.
a public use. He admits "that a street, highway, or *right of public passage* may be derived from a dedication," and cites a formidable array of cases, in the courts of Great Britain, and of many of our own States, in support of the principle, and yet he holds that it does not apply to the case of a public landing. The learned judge evidently had an impression that the right claimed in that case, and implied from the phrase "public landing," was not merely the *right of way*, but also a right to permanently occupy the land as a *depot* for lumber, manure, &c. He says (p. 122) : "The claim is for each and all persons in the State, indeed, for any one in the whole world, who shall have occasion, to deposit lumber, manure, or other articles on the soil of the plaintiff. The question is, can such a claim be made to any right, *except that of way ?*"

And again (p. 126), in speaking of ways, urbans, commons, and walks, or other places of recreation by travel, he says : "Even ejectment will lie by the owner for a permanent incumbrance ; whereas, by a customary profit *a prendre*, as of common, and above all, a right to deposit articles of merchandise, by all the world, the owner is deprived of the use of the soil itself ; it is covered with buildings, or by piles of lumber, heaps of manure, or by merchandise, at the discretion of all people."

It is not necessary that we should at this time decide whether the occupation of a public landing by permanent obstructions, such as buildings, lumber, and the like, would be a *user* of the ground, according to the purpose of the dedication ; but it is fairly inferrable from the language of the learned judge, that for the purpose of a right of transit for goods

and persons, dedication may be predicated of a pub-

lic landing. If we include in the right of way, the
necessary and incidental right of temporary deposit,
in the transfer of goods from water craft to the ordi-
nary vehicles used in land carriage, then our views of
this question are sustained by the opinion of Judge
Cowen, and we think that a reasonable exercise of the
right of way involves this temporary occupation of
the ground. The case just cited was removed to the
Court of Errors, where the judgment of the Supreme
Court was affirmed, although Judge Cowen's views
were not fully endorsed. The Chancellor (Walworth),
and Senators Edwards and Livingston, delivered opin-
ions, in which they denied the application of dedica-
tion to a public landing; while Senators Furman and
Verplanck affirmed its application, in opinions replete
with sound reasoning.

In the case of *McConnell vs. The Trustees of Lex-
ington*, 12 *Wheat.* 582, Chief Justice Marshall holds
that this doctrine of dedication, arising from matters
*in pais*, extends to the case of a spring reserved for
public use. He says: "The reasonableness of reserv-
ing a public spring for public use; the concurrent
opinion of all the settlers that it was so reserved;
the universal belief of all, that it was never under-
stood that the spring lot was drawn by any person;
the early appropriation of it to a public purpose, &c.,
are, we think, decisive against the appellant."

The same court afterwards, in the case of *The City
of Cincinnati vs. The Lessees of White*, 6 *Peters*, 431,
applied the principle of dedication to a *public com-
mon*. Mr. Justice Thompson, who gave the opinion
of the court, after discussing the application of the
principle to highways, proceeds to say: "If this is the

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.
doctrine of the law applicable to highways, it must apply with equal force, and in all its parts, to *all dedications of lands* to public uses." "The right of the public to the use of the common in Cincinnati, must rest on the same principles as the right to the use of the streets." "All public dedications must be considered with reference to the use for which they are made, and streets in a town or city may require a more enlarged right over the use of the land, in order to carry into effect the purposes intended, than may be necessary in an appropriation for a highway in the country ; but the principle, so far as respects the right of the original owner to disturb the use, must rest on the same ground in both cases, and applies equally to the dedication of the common as to the streets."

At the same term, in the case of *Barclay and others vs. Howell's Lessee*, 6 *Peters*, 498, the court upheld a dedication of a slip of land between the north line of Water street, in the city of Pittsburg, and the margin of the Monongahela river, for a public street or *right of way*. It may not be improper to remark, that in each of the two cases last cited, the *locus* was situated on the margin of a river, and was used as a place of landing for persons and property. Afterwards, in the case of *The Mayor, &c., of New Orleans vs. The United States*, 10 *Peters*, 662, the court, among other things, say : "There can be no difference in principle between ground dedicated as *a quay* to public use, and the streets and alleys of a town."

In Massachesetts, a plea of a public prescriptive right to a landing place on the Charles river was held good. *Coolidge vs. Learned*, 8 *Pick*. 503. In Vermont, the principle has been applied to a public square (2 *Vermont*, 480), to a court house square (3

Dᴇᴄ. Tᴇʀᴍ
1853.

Gardiner
vs.
Tisdale et
al.

*Vermont,* 521 ; 6 *id.* 355), and to a college green, (3
*Vermont,* 530.)   So also in New York, it has been
extended to a public square (4 *Paige,* 513), and to a
burying ground, (*Hunter vs. The Trustees of Sandy
Hill,* 6 *Hill,* 407.)

In Illinois, the principle of dedication has been ap-
plied to the case of a public landing on the Mississip-
pi river, in two cases.  *Godfrey vs. The City of Al-
ton,* 12 *Illinois,* 29, was the case of a public highway
and landing, which was called "Front street," and ex-
tended to the low water mark.  By accretion and fill-
ing up with stone, &c., the width of the street was in-
creased, and the original proprietors claimed a strip
of land extending from Front street to the river, and
which had been acquired by accretion and filling up
as above stated ; but the court held that the original
laying out of the street *extending to the river,* for a
public highway and landing, and the use of it for the
purpose, by the public, amounted to a dedication.
We do not mean to say, that the court was correct, or
not, as to the evidence being sufficient to establish a
dedication, but we think they were correct in holding
that it might be applied to a landing place.  (*See
also, The City of Alton vs. The Illinois Trans. Co.,*
12 *Ill.* 38.)

A careful examination of the subject has satisfied
us that an easement in favor of the public, such as a
public landing, or other place for public use and en-
joyment may be *dedicated.*

We are not called upon at present to determine,
nor are we disposed to discuss, what evidence is neces-
sary to establish a dedication of a public highway,
street, public landing, or other easement ; this is a
question to be submitted to the jury upon the circum-

N

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

stances of each particular case, and among others, a most material inquiry with the jury should be, whether an *intention* on the part of the land owner, to dedicate, has been shown. *Barraclough et al. vs. Johnson et al.*, 8 *Adolph. & El.* 99 ; *The Grand Surrey Canal Co. vs. Hall*, 1 *Man. & Grange*, 392 ; *Jarvis vs. Dean*, 3 *Bing.* 447 ; *The Trustees of the British Museum vs. Finnis et al.*, 5 *Car. & P.* 640, *and note* (*a*); *Post vs. Pearsall*, 22 *Wend.* 425 ; 3 *Kent's Com.* 450, 451, *and note.*

Although length of time, as it relates to *user*, becomes in some cases an important consideration, yet in a country like ours, where roads and highways are being constantly enjoyed over the lands of persons without any authority of law, and by the tacit permission of the owners, but without any act of theirs showing an intention to appropriate or yield their property to public use, we think it would be mischievous to permit user of itself, to be evidence of dedication. Other facts and circumstances ought to be shown, which might not only evidence an intention to devote the use of the property to the public, but an actual appropriation.

We have seen that, by dedication, the public may acquire an easement in a public highway, and this easement, like others of a similar kind, such as a highway, is perfectly consistent with the right to the soil remaining in the dedicator or owner ; and we think it a necessary consequence, that if the use and enjoyment be relinquished or abandoned, as, for instance, if it be impossible to use the property for the purpose, and in pursuance of the dedication, or if there be a *non user* for a sufficient length of time to be evidence of a discontinuance and abandonment, the property

will revert to the original owner, provided he has not DEC. TERM
1853.

Gardiner
vs.
Tisdale et
al. in some manner parted with his interest in the soil. Perhaps it would 'be more correct to say, that the title to the soil is released from the easement, wherever that title rests at the time of the abandonment. *Vide Alden vs. Murdock*, 13 *Mass.* 256–9 ; *Jackson ex dem. Yates et al. vs. Hathaway*, 15 *John.* 447 ; *Whitbeck vs. Cook and wife*, 15 *id.* 483 ; *Barclay et al. vs. Lessees of Howell*, 6 *Peters*, 513, in which last case, Mr. Justice McLean sustains the general doctrine, but holds (p. 507) that where the land has been misappropriated, it does not cause a *reverter* ; probably this would not be considered an abandonment. *Parley vs. Chandler*, 6 *Mass.* 456.

The only remaining question which we propose to examine in this case is, whether, assuming that the land in controversy was by grant or by dedication, set apart for a public use and used accordingly, the original owner, or those claiming under him, could maintain an action of ejectment against a permanent incumbrancer who occupies and uses the whole or a portion of the land dedicated for purposes repugnant to, and inconsistent with, the public use.

There can be no doubt that the owner may maintain *trespass* for an injury to the freehold, carrying away the grass, cutting down shade or fruit trees, or any other injury not warranted by the public use ; and to entitle him to maintain trespass, he must have the actual or constructive possession. If the right were merely reversionary, his remedy would be *case.*

It is true, the possession of the owner must be entirely consistent with the occupancy and use by the public, but it is obvious that the exclusive occupancy

Dec. Term 1853.

Gardiner
vs.
Tisdale et al.

of the whole or any distinct portion of a public highway, landing, or square, by the erection of a building thereon, for private use, must be an infraction alike of the rights of the owner and of the public. Where the rights of the latter are invaded, the remedy is of a public character, by the ordinary process of indictment, while the rights of the owner must be asserted, if at all, by the usual private remedies. Upon this subject, our attention has been called to the opinion given by Mr. Justice Thompson, in the case of *The City of Cincinnati vs. The Lessees of White*, 6 *Peters*, 431. It is entirely becoming, that State tribunals should yield the utmost respect to the decisions and opinions of the highest federal court known to the constitution, composed as it is, and always has been, of men of the most distinguished acquirements. On some subjects, their exposition of the law is to be received by us as conclusive, and upon all subjects it is entitled to the very highest consideration, although in some instances not obligatory. Of this latter character is the opinion in the case just cited, in which the learned judge advances some propositions of law that we are compelled to dissent from. In discussing the right of the owner of the soil in a common, dedicated to public use, to maintain ejectment against an incumbrancer, he says: "But if we look at the action of ejectment, on principle, and inquire what is its object, it cannot be sustained on any rational ground. It is to recover possession of the land in question; and the judgment, if carried into execution, must be followed by delivery of possession to the lessor of the plaintiff. The purpose for which the action is brought, is not to try the mere abstract right to the soil, but to obtain actual possession; the very thing to which

Dec. Term
1853.

Gardinor
vs.
Tisdale et
al.

the plaintiff can have no exclusive or private right. This would be utterly inconsistent with the admitted public right. That right consists in the uninterrupted enjoyment of the possession. The two rights are therefore incompatible with each other, and cannot stand together. The lessor of the plaintiff seeks specific relief, and to be put into the actual possession of the land. The very fruit of his action, therefore, if he avail himself of it, will subject him to an indictment for a nuisance, the private right of possession being in direct hostility with the easement or use to which the public are entitled, and as to the plaintiff's taking possession subject to the easement, it is utterly impracticable."

It is certainly true, that the object of the action of ejectment is to recover the possession from one who has taken it to himself to the exclusion of the plaintiff, in common with the public, and who has thereby become a *tort feasor* as against the plaintiff; but the possession which is sought to be recovered, is in our judgment, entirely compatible with the public enjoyment, and is neither more nor less than the same possession which the plaintiff had in law before the entry or *ouster* by the defendant.

We are at a loss to discover the impracticability of placing the plaintiff in *statu quo*, by means of a recovery and writ of *habere facias possessionem*, any more than in the case of a recovery of an undivided interest; and surely in the case of a recovery by a tenant in common, or joint tenant who has been excluded, or his right as such denied, the possession redelivered to him, is equally as restricted by the possession of his co-tenant, as is the possession to be delivered to the owner of lands dedicated to a public use by the ease-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

ment or right of use by the public. The public right to uninterrupted enjoyment can exist in perfect harmony with the possession sought to be obtained by the plaintiff, and we ought not to presume that the plaintiff would prosecute his action with the object of substituting himself as a wrong doer in continuing a public nuisance. If there be no doubt as to the law, arguments *ab inconvenienti* are not esteemed forcible ones. The possibility that by permitting the plaintiff to recover, he will be enabled to violate the law *if he choose to do so*, furnishes no reason why he should be denied a legal right, and we ought rather to presume that he would uphold the law by abating a public nuisance, than violate the law by continuing such nuisance. At all events, we are not at liberty to presume a guilty intention in such a case.

In the very able opinion of Judge Swift, in *Peck vs. Smith*, 1 *Conn.* 136, we find this objection to a recovery in ejectment thus disposed of: "How can the defendant say it is not the object of the plaintiff to recover possession to abate the nuisance. It might lead to a great disturbance, to pull down a house over the heads of the family of a man who had erected it in the highway. The adjoining proprietor, instead of resorting to this violent measure, may wish to recover possession for the purpose of abating the nuisance in a peaceable manner, and it can never lie in the mouth of the wrong doer to say such is not his object."

We are well convinced that an action of ejectment may be maintained by the owner of the soil, of a highway or public landing, against an individual who has entered upon and become a permanent incumbrance of the land, or any distinct portion of it, by the erection of a building or otherwise, to the exclu-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

sion of the public and the owner. Such, in our judg-
ment, is the result of the authorities, and with the ut-
most respect for the opinions of Mr. Justice Thomp-
son, we must believe that on this subject his views
are in conflict with the weight of authority to be
found in other courts who have had the precise ques-
tion before them for decision.

In *Goodtitle ex dem. Chester vs. Alker and Elmes*,
1 *Burr.* 133, where one of the questions argued and
decided by the court was, "whether an ejectment
will lie by the owner of the soil, for land which is
subject to passage over it as the king's highway,"
Lord Mansfield, with Mr. Justice Dennison and Mr.
Justice Foster, held, that the action could be main-
tained, because the ownership of the soil was not in
the king, and a recovery of it by the owner, and deli-
very to him of the possession by the sheriff, might
well be consistent with, and subject to the right of
passage or easement. This has long been considered
the leading case on the subject, and in almost every
case since, it is referred to and commented upon.

In the American courts, we find this question re-
peatedly decided in favor of the maintenance of the
action. We will only refer to the several cases cited
to this point by the counsel for the plaintiff in error,
and to *Tillinghast's Adams on Ejectment*, 18, and the
cases cited in the notes to be found there ; this is all
that we consider it necessary to do at present without
referring to them in detail. That there are some cases
to be met with, in which a contrary doctrine is upheld,
cannot be denied, but the weight of authority is un-
questionably the other way, and we think that no
substantial reason can be urged against permitting the
owner of the soil, which is only subject to an ease-

Dec. Term
1853.

Gardiner
vs.
Tisdale et
al.

ment, and who has not only the freehold, but the right to the possession as against a wrong doer, to recover in an action of ejectment, subject to the easement secured to the public. The fruits of his action do not conflict with, or impede the rights of the public; on the contrary, he is but restored to the same condition, to the same possession which he enjoyed before the wrongful act of the defendant.

We think the provisions of chapter 57, of the Revised Statutes, concerning uses and trusts, have no application to the present case.

Upon the whole, we believe the Circuit Court erred in giving the instruction asked for by the defendant, on the subject of the making and recording of the town plats, and in refusing the fourth, fifth, sixth and ninth instructions asked by the plaintiff. The judgment must, therefore, be reversed, and the cause remanded for a new trial.