BUSHNELL VS. SCOTT.

*Dedication of lands to public use.*

1. Lands cannot be dedicated, except by the action of the owner, or of his agent having authority from him for that purpose.
2. Where a stranger performs acts in reference to land, which would amount to a dedication of it to a public use in case he were the owner, he is not bound by those acts upon subsequently acquiring the land.

APPEAL from the Circuit Court for *Racine* County.

Trespass *quare clausum*. Answer, highway. Plaintiff, in 1861, and until 1864, occupied or claimed to occupy as tenant of one Richards, a triangular tract of land, containing about two acres, bounded on the north by a town line separating it from plaintiff's farm, on the west by the Fox river, and on the south by a strip of land taken by the Racine & Mississippi R.

R. Company for its road-bed, running in a north-easterly direction from the river to said town line, and thence to the "Kenosha road," which lay east of plaintiff's farm.   Defendant owned a quarter acre tract, bounded on the west by said river, and surrounded on all other sides by plaintiff's farm, except that its southern point touched Richards' two acre lot. From this quarter acre tract a dam extended across the river, and at its opposite end was a flouring mill owned by defendant.   In 1861, defendant built a bridge across the river just above the dam, and abutting at its eastern end on said quarter acre tract.   In April of either 1861 or 1862, plaintiff, at defendant's request, and with materials partly furnished by him, built a fence from the north side of said bridge in a south-easterly direction to the land of the railroad company, mainly across said land of Richards, and consented to defendant's using for a road the land along said fence on its south-easterly side; and defendant thereupon opened and worked such road. In February, 1864, plaintiff purchased of Richards the whole tract first above described, and took a deed thereof.   In April of that year he took down the fence above mentioned, and built his fences so as to enclose the aforesaid road, and forbade defendant to cross his land from the bridge to the railroad ; and in December following defendant committed the alleged trespass in removing a part of the fences so built, and passing over said roadway.

Plaintiff's evidence tended to show that it was in April, 1862, and *after* defendant's bridge was nearly completed, that he (plaintiff) consented to build and did build the fence first above mentioned, and gave his consent to defendant's using said road; that he said at that time to defendant, " I will stand between you and trespass until you can write to Richards, and either buy or lease" said two acres; and that plaintiff thereupon wrote to Richards (who resided in New York), under date April 14, 1862.   This letter, which Richards testified was

the first he ever received from the defendant relating to that subject, was put in evidence, and was as follows: "Dear Sir: There is a small piece of your land lying north of the railroad, amounting to about two acres. I have been building a bridge across the river on the dam, and wish to purchase from you the above, for the purpose of getting a road through to the Kenosha road. Your two acres do not extend to the Kenosha road, but I can get the remainder from the railroad company, but cannot get to the railroad without crossing your land; therefore I would like to purchase," &c. Richards answered this letter. In January and August, 1863, defendant made further applications to him to purchase said lands, but received no answer. As to the character of the answer to the letter of April 14, 1862, Richards testifies as follows: "I refused to sell him, giving my reasons, but informed him I was favorably disposed for him to have a road, and stated that I would call and see him when I next came to Wisconsin. I did call at his mill, but did not see him." He further testifies: "The only negotiation that I had in any way with defendant was in answering this letter; and as to conversations with him, I never knew him until after I sold the land to *Bushnell*.  *  *  My intentions were that defendant should have a road across the premises; when *Bushnell* applied for the land, I forgot to state to him that I had given *Scott* encouragement that he should have a road. After drawing the deed to *Bushnell*, I had intended to retain it until arrangements were made between *Scott* and *Bushnell* about the road. I sent the deed to my agent Perkins, requesting him to see *Bushnell* and *Scott*, as I was favorably disposed that *Scott* should have a road."

The defendant's evidence tended to show that it was in April, 1861, and *before* the bridge was built, that plaintiff built said fence from the river to the railroad, and consented to defendant's opening the road. Defendant himself testified that he wrote to Richards in February, 1861, stating that he was

about to build a bridge, if he could get an outlet to the Keno-sha road ; that he received a reply about the last of March or first of April of the same year, which he had lost; that the substance of the reply was, that Richards would not sell the land, but defendant could have the use of it for a road ; that defendant showed the letter to plaintiff, who thereupon agreed to build and did build the fence from the bridge to the rail-road, and consented to his using the road as above stated. " During the summer of 1861, I built the bridge; should not have built it but for this road; it cost me $550 to $600. I also worked the road the same season ; put in a culvert, and hauled on dirt, at a cost of $25 or $30."

The court refused the following instructions asked by the defendant : 1. " If the defendant and the public were in pos-session of the premises, claiming them adversely to the plaintiff and his grantor as a road, at the time plaintiff obtained his deed from Richards, the deed was void to that extent, and conferred upon plaintiff no right to close up the road." 2. The acts and conduct of plaintiff, as well as of his grantor, may be taken in-to consideration in determining whether the premises had been dedicated by them or either of them to the use of a road." 3. " If defendant was induced to build the bridge or make the road in consequence of the acts and conduct of the plaintiff and his grantor, then plaintiff was estopped from setting up a right to obstruct the road."

The following instructions were given : " 1. Dedication is the deliberate appropriation of land by its owner for any gen-eral and public use, reserving to himself no other rights in the soil than such as are perfectly compatible with the full exer-cise and enjoyment of the public use to which he has devoted his property. 2. An intention on the part of the owner to dedicate must be shown, as well as an actual appropriation of the property by the public, for the use to which it is dedicated. 3. The acts of plaintiff in building the fence and permitting

the road to be opened and worked, were binding upon Richards only so far as he had authority from Richards to do those acts; and it is entirely immaterial whether the plaintiff upon his own behalf did acts of dedication of the premises in question, before he became owner of the same. 4. If Richards promised defendant the road for public use in consideration that defendant would bridge the river and build the road; and defendant did so; and the road was opened and used by the public as a highway, for a considerable time; these facts would go far to prove a dedication by Richards. 5. The fact that the road was opened and in public use as a highway, when plaintiff received a conveyance of the premises, is constructive notice to the plaintiff of the rights of the public thereto, whatever those rights may be, and he is in the position that Richards would be in, had he retained the title to the land. 6. If there was therefore a valid dedication by Richards of this land for public use, then the fences placed there by plaintiff were public nuisances, and the defendant or any other citizen had a right to remove them, if the removal was effected without any breach of the peace."

A verdict for the plaintiff was set aside, and a new trial granted: "the court being of opinion that it had erred in charging the jury that it was entirely immaterial whether plaintiff did acts of dedication of the premises before he became owner of the same." From this order plaintiff appealed.

*Fuller & Dyer*, for appellant.

*Geo. B. Judd*, for respondent:

1. An adverse possession is valid, though not founded upon a paper title. R. S., ch. 138, sec. 9. The deed from Richards to plaintiff of land in the possession either of the public as a public highway, or of the defendant as a private road, was so far void. R. S., ch. 86, sec. 7; 1 Chand., 52, 247–8; 6 Wis., 527. 2. If plaintiff could recover in any action, it was ejectment and not trespass; defendant or the public being in the

actual possession of the land.  1 Johns., 511; 9 id., 61; 19 Wend., 507–9.  3. Plaintiff, while in possession of the premises, acting for himself and in behalf of Richards, fenced out the road or highway, and put defendant in possession; and Richards afterwards, by his acts, acquiescence and expressed intentions, adopted plaintiff's acts; and both are therefore estopped from setting up an exclusive right to the premises, and from obstructing the use of the road or highway, and certainly from maintaining this action.  12 Petersdorff's Ab., 178, Case 4;  *Winter v. Brockwell,* 8 East, 308;  2 Wis., 153, 187–8, and cases there cited;  9 id., 240;  10 id., 444;  14 id., 443, 445–6;  13 id., 142, 147, 155;  8 Wend., 480, 483;  12 id., 172;  16 id., 542–3;  3 Hill, 215–16, and notes 3, 4, 5 on pp. 219, 221–2.  4. Defendant and the public being in possession of the premises by the acts and consent of the plaintiff and Richards, he was at least entitled, as tenant at will or by sufferance, to a month's notice in writing to quit, before he could be treated as a trespasser.  R. S., ch. 91, sec. 2.

COLE, J.  We are of the opinion that the charge of the court in this case was as favorable to the defendant as the facts would warrant.  The law in respect to dedication was correctly defined as being an appropriation of land by its owner for any general and public use, the owner reserving to himself no other rights in the soil than such as are perfectly compatible with the full exercise and enjoyment of the public use to which the property has been devoted.  *Gardner v. Tisdale,* 2 Wis., 153;  *Connehan v. Ford,* 9 id., 240;  *Irwin v. Dixion,* 9 How. (U. S.), 10.  The court instructed the jury that an intention on the part of the owner to dedicate must be shown, as well as an actual appropriation of the property by the public for the uses to which it is dedicated;  and further that the acts of plaintiff in building the fence, and permitting the road to be opened and worked, were binding upon Richards only so far as he had au-

thority from Richards to do those acts; and that it was entirely immaterial whether the plaintiff upon his own behalf did acts of dedication of the premises in question, before he became owner of the same.   That no one but the owner, or his duly authorized agent, can dedicate property to the public use, is a proposition too clear to require the citation of authorities in its support.   The idea of dedication involves, of necessity, an act of the owner indicating an intention to part with the exclusive dominion and enjoyment of his land, and to abandon or devote it to some public use.   A. certainly has no right to dedicate B.'s property to the use of the public.   Dedication must rest on the clear assent of the owner of the land, in some way manifested, to such dedication.   In this case the court charged the jury, in effect, that it was quite immaterial that a stranger performed acts in respect to land which might amount to a dedication of it if he had been the owner ; that such acts could not affect the owner, or amount to a dedication, unless done with his consent or by his authority.   We suppose a person, unless authorized so to do, can no more dedicate another's land to the use of the public, than he can convey it by deed.

A new trial was granted on the ground that the circuit judge supposed he had fallen into an error in charging the jury that it was entirely immaterial whether the plaintiff upon his own behalf did acts of dedication of the premises in question, before he became the owner.   The court seems to have supposed that the plaintiff, by aiding in building a fence upon the land, and in permitting a road to be opened and worked upon it, was estopped, after he became the owner, from contesting the question of dedication by his grantor.   But if the plaintiff had no interest whatever in the land, no right to perform any act of dedication in reference to it, when the fence was built and the alleged road opened over it, upon what principle can it be claimed that he is estopped from showing, when he afterwards acquired title, that the owner never did dedicate it to the pub-

lic? The court held that the fact that the road was opened and in public use as a highway when the plaintiff received a conveyance of the premises, was constructive notice to him of the rights of the public, whatever those rights were, and that he was in the same position his grantor Richards would have been in, had he retained the title to the land. If nothing was done by Richards tending to show a dedication of the *locus in quo* to the public for a highway, we do not think the plaintiff's rights were affected by his own acts done before he acquired title.

This point is the only one in the case we deem it necessary to notice.

We are of the opinion the circuit court erred in granting a new trial.

*By the Court.*—The order granting a new trial is reversed.