## Case No. 10,110.

### NELSON et al. v. MADISON.

[3 Biss. 244;[1] 4 Chi. Leg. News, 297.]

Circuit Court, W. D. Wisconsin. June Term. 1872.

DEDICATION BY PLATTING—PLAT RECORDED IN WRONG COUNTY — PLAT MUST BE BY OWNER — EVIDENCE OF DEDICATION BY PRESCRIPTION.

1. The owner of land, or his authorized agent, can plat and lay out a town so as to pass to the public the perpetual use of portions of the land for streets and public grounds, and when such plat is made out, acknowledged and recorded in conformity with the statute, it operates as a sufficient conveyance of the streets and public grounds to the public use.

2. A plat made out and recorded in a different county from where the land is situate does not operate as a dedication.

3. The plat must be made by the person who owns the land at the time it is made, or his authorized agent, and in order to divest the title of the proprietor, the formalities prescribed in the statute are essential.

4. Deeds referring to a plat, but given before the grantor acquired title, do not bind him as an act of dedication.

[Cited in Boerner v. McKillip (Kan. Sup.) 35 Pac. 8.]

5. But an unequivocal recognition of the map after purchase would operate as an affirmance of the original intention of dedication and give it full force and effect.

6. Though dedication may be established by user for a period of twenty years, such user, in order to constitute a dedication by prescription, must have been adverse under some real or pretended claim or right, and exclusive. In the absence of proof to the contrary, the presumption is that the user was permissive.

7. Various decisions of the supreme courts of Wisconsin and of the United States cited and commented on, this court following the latter.

8. Circumstances constituting a dedication—effect of user and acquiescence.

[9. Cited in Reid v. Board of Education of Edina, 73 Mo. 297, to the point that counties have no power to purchase or hold land unless it is given to them by statute.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

In equity. This was a bill filed by the complainants, claiming to be owners in fee of certain real estate in the city of Madison, to restrain the city from taking possession of or using them. The facts appear in the opinion.

Gregory & Pinney and S. U. Pinney, for complainants.

J. C. Ford and H. S. Orton, for defendant.

HOPKINS, District Judge. The bill in this case is filed to restrain the defendant from proceeding forcibly to remove a fence erected around a piece of ground situated in the city of Madison, and claimed by the complainants as lots one, two, three and four, block 272. It is alleged in the bill that the complainants placed such fence around the lots to enclose them, and that the defendant has ordered its police officers to remove it. The complainants charge that they own the lots in fee, and ask a perpetual injunction to restrain the defendant from intermeddling with the said fence or the possession of the lots.

The defendant in its answer denies that the premises claimed belong to the complainants, but on the contrary sets up and maintains that they have been dedicated to the public use as a landing or "square," for the use of the public, and that as such they are under the control of the city authorities, and admits that it has directed its officers to remove the fence in case the complainants do not do it after five days' notice. The answer further alleges that the common council of the city, on the 5th day of November, 1870, declared the premises in question to be a public square by the name of "Mendota Public Square." It also alleges that the proprietors and owners of this property more than thirty years before the commencement of this suit, duly granted and dedicated the same to the public for their use as a public landing, street, or public way to and on to Lake Mendota, and that it had been used as such for that period by the public, without objection or hindrance from the complainants or others up to the time the complainants erected the fence around it in December, 1870.

It also states that in 1836 the proprietor of the land embraced within the city of Madison laid out and platted it into lots, streets and squares, and duly acknowledged and recorded such plat in the proper county, and that afterwards it was duly recorded in Dane county, in volume 2 of deeds, page 338, and that on that map or plat this property is designated as a "public landing," and defendant insists that it was thereby granted and dedicated to the public for such use.

The bill alleges that for more than twenty years last past the city has assessed and taxed it as private property, and that the complainants and those under whom they claim, have paid the taxes on such lots, and special assessments for sidewalks, which is admitted in the defendant's answer.

The only questions that require much examination are those relating to the validity and effect of the plats, and if they should be found invalid as grants, then as to whether the defendants have shown a dedication or title by prescription. This I say because I think the evidence abundant to show title in the complainants, unless it is avoided by the plats, dedication, or user.

Three plats of the city have been given in evidence. One made by James D. Doty, individually, acknowledged on the 27th day of October, 1836, and recorded in Iowa county on the 5th May, 1837. Upon this, property on Lake Mendota, now known and described as blocks 260, 261 and 262, and portions of the lots in question, are marked "Public Landing." The residue of these lots are a part of what is called on the plat the "Canal Reservation." It is claimed that this shows that the intention of the proprietor was to reserve certain portions of land on the margin of the lake on each side of the proposed canal for a "public landing." If this were all there was upon that question, I should concur with the defendant's counsel; but the case presents other and different questions. The land platted was not in Iowa county, where the plat was recorded, but was in the county of Milwaukee, so that it was not recorded in the county required by the statute. At the same time another plat was made by J. D. Doty, "as agent, trustee and attorney of the Four Lake Company," which was acknowledged by him as such attorney on the 2d day of January, 1837, and recorded in Milwaukee county on the 17th day of January, 1837. Both of these plats appear to have been prepared by John V. Suydam, as surveyor, whose certificate on each bears date on the 27th October, 1836. On this map the property now known as blocks 260, 261 and 262, is not platted or subdivided into lots or blocks, nor designated as a "public landing." The property in question is left the same way, except that part included in the "canal reservation." which is the same as on the other plat. The surveyor's certificate on each is the same, and in neither is this property or any of this property on the lake not subdivided, mentioned as a "public landing" or "square," nor is it particularly described, nor are the dimensions, courses, or boundaries given. In these respects both plats are essentially defective and do not comply with the statute under which they were made (section 2, Act Mich. April 12, 1827, p. 531; Laws Mich. 1833). And as they are not executed, acknowledged and recorded in accordance with the requirements of the statute, they are not valid or operative as grants of the portions designated as streets and public squares.

The complainants further object to their validity on the ground that neither Doty nor "the trustees of the Four Lake Company" owned the land at the time the plat was made and acknowledged. It cannot require the citation of authority to show that no person other than the owner or his authorized agent

can plat and lay out a town so as to pass to the public the perpetual use of portions of the land for streets and public grounds; and as the evidence shows that neither Doty, individually, nor "the trustees of the Four Lake Company," for whom he claimed to act as attorney in making one of the maps, owned this land when they were made, they are, on that ground, ineffectual to pass the title to these lots, or any portion of the land, as public grounds. When a town plat is made, acknowledged and recorded in conformity with the statute, it operates, according to the express declaration of the act authorizing it, as "a sufficient conveyance of the streets and public grounds to the public use." But in order to devest the title of the proprietors, the formalities prescribed by the statute are essential. Gardiner v. Tisdale, 2 Wis. 153; People v. Beaubien, 2 Doug. 256.

The counsel for the defendant claim that as Doty, in 1841, after making the plats, acquired the title to all this property, such subsequent purchase operated, under the doctrine of inurement, to affirm the plat and make good all grants and dedications therein contained. Lee v. Lake, 14 Mich. 12. But I do not think that doctrine applies to the case. That only applies to sales with warranty. In such cases, an after-acquired title is held to inure to the benefit of a purchaser to prevent circuity of action. But I think an unequivocal recognition of the map after the subsequent purchase would operate as an affirmance, as will be more fully considered hereafter. Cincinnati v. White's Lessee, 6 Pet. [31 U. S.] 431.

Another map was made by M. M. Strong, as attorney for Kintzing Pritchette, on the 10th day of October, 1839, which on the same day was acknowledged and recorded in Dane county. On this map, all this property that is marked on the Doty map as a "public landing" (except the lots in controversy) was laid off into blocks as numbers 260, 261 and 262. This property in controversy is not laid off into blocks or designated at all, except by a blank space, but more than three-fourths of what was called in Doty's plat a "public landing," is laid off into blocks, and it was soon thereafter built upon, and has been occupied as private property ever since.

The defendant does not claim to make title to the property as a public square or landing under that plat, for it is not designated as such thereon. The mere omission to divide portions of the property within the limits of a town into lots or blocks, does not operate ipso facto as a grant or dedication of such parts. But it is unnecessary to continue the further consideration of these plats as legal instruments to pass the title, for the counsel of the defendant, on the hearing, did not contend with much confidence that they were executed in compliance with the requirements of the statute, so as to operate as conveyances. But he maintained that they, and particularly the Doty plat first mentioned, constituted very strong, if not conclusive evidence, of a dedication by the proprietor to the public for the use and purpose designated.

But it seems to me that one of the grounds upon which I have held the plats to be inoperative as grants, applies equally to this claim. I have held that as the person laying it out did not own it, he could not legally plat it, and it would seem to follow as a logical conclusion, that if he did not own it he could not dedicate it, for a party cannot give away what he does not own, any more than he can sell it. Bushnell v. Scott, 21 Wis. 451. In the decision of this case, the intention of Mr. Doty, as manifested by the plats, must be laid out of view, unless it shall be found that after he acquired the title in March, 1841, he, by some act, clearly recognized the plat. If he did, I think it would operate against him and those claiming under him as an estoppel in pais; and if he recognized it in such a way, I think it should be held also to be an affirmance of his original intention of dedication as shown by the map; it should be held to be equivalent to a reexecution and acknowledgment of it and give to it its full force and effect, so far as dedicating to the public the right to use the streets and public grounds.

The defendant, for the purpose of showing such recognition, gave in evidence several deeds executed by him, in which he refers to his individual plat as the plat according to which he sells. But I do not find that any deed of that kind was given after he acquired the title. They do not bind him, therefore, any more than the plat itself, so that the case must be determined upon the question of dedication arising by prescription, user, and a peaceful and willing acquiescence by the owners in such use for such a length of time as to presume a grant. Upon this question there is some apparent conflict in the testimony; but I think when carefully examined, such conflict will be found to exist more in the different meaning of the terms used by the witnesses than in any difference in the facts they meant to relate. The defendant's witnesses state that they always understood it to be a "public landing," and that it had been so used up to the time of the building of the fence, since the town was first settled; while the witnesses on the other side say that it has been so used, but they never understood that the city or any one else claimed the right to use it in that way. The defendant's witnesses probably understood it to be such, because it was called the "Landing," while the plaintiff's witnesses did not understand that it was so claimed simply because it was called such. There is no evidence of the exercise of any authority over it on the part of the public authorities. Governor Farwell, who owned it from February, 1847, up to 1859, and Richardson and Van Slyke, who have since acted as the agents of the complainants, testify that they never heard it claimed as public property until

about the time it was enclosed by the fence. I think, therefore, that no formal claim of right had ever been made to it on the part of defendant, or any claim sufficient to require a denial of it by the owners, or any action on their part to prevent its being so used in order to protect their interest. It is clearly proven that it had been traveled over ad libitum by persons going to the lake, and that the fire companies of the city had used it on their parade days. This property had remained open and unimproved, although the complainants had granted permission to Manning, Briggs and Hudson to pile wood upon it, and to use it in that way for their private purposes for some portion of the time during the last ten or twelve years. The old pier or steamboat landing built in 1837, spoken of by some of the witnesses, was not opposite this property, but was, according to the testimony, opposite the old mill on block 262, and the pier built more recently is at the end of East Canal street, and not on any of this property. This is a narrow strip between East and West Canal streets; a part of it was, I should infer, reserved or intended to be by the original proprietors of the town, for a canal to connect Lake Mendota and Monona, to be used by them either as a raceway for mills, or for navigation, as the wants and necessities of the country should demand. Long before the place was much settled, I think the idea of using the lakes for purposes of navigation was abandoned, for in 1839 the space originally left as a landing, or for some other purpose, was platted for private uses, as appears by the Pritchette plat hereinbefore mentioned, and only the piece lying between East and West Canal streets, a part of which was designated as the canal reservation, was left, which may still have been considered as valuable for purposes of a water power.

This change of purpose seems to have been generally acquiesced in by both the public and public authorities, for there is no evidence of any objection ever having been made to it, and all of that part then platted has been occupied for a great many years with mills, factories, and dwelling-houses.

The fact that more than three-fourths of the land originally designated as a "landing," has been devoted to private uses, and used as such a great many years, without objection on the part of the city or any one, negatives the idea that it was understood originally that this property was in fact dedicated or intended to be dedicated to public use. For if Doty dedicated any, he dedicated the whole marked on his map, and we have no right to limit or restrict his intention to dedicate only this piece in controversy. It must be borne in mind that at the time of that platting, the town in that vicinity was covered with timber and small bush, and that Gorham street in front of these lots, which is now one of the principal residence streets in the city, was not cut out, as Governor Farwell in his testimony, says, until 1849, when he says he had it cut out and cleared off. Before that he says the travel was not confined to the streets in that part of the town, but wound around in places most available, without reference to the line of the streets, and as he first improved the property in that vicinity, I think his testimony as to its condition at that time and previously, entitled to the most weight of any given in this case. To hold that there had been any such use as the law contemplates as the foundation of a title by prescription, is attaching altogether too much consequence to the irregular travel and trifling use of it by the public before that time. I do not think such a use for any length of time of land in its natural state would devest the owner of his title to it, or any part of it. James Richardson testifies that in 1849 he was employed by Governor Farwell, who then owned this property, to survey and lay it out into lots and blocks, which he did, numbering the lots 1, 2, 3, and 4, block 272; that since that time it has always been claimed as private property, first by Farwell, and since by the Nelsons, and it has since been designated on the maps of the city generally in use, as "Block 272," and he swears that as the agent of the Nelsons, in 1860 and 1861, he permitted it to be occupied by Mr. Briggs, and after that by Manning and Hudson, for piling wood. No objection was made by the city to such use, nor was any claim made that it was public property. The case shows that ever since it was platted by Richardson for Farwell it has been assessed and taxed as private property, and that these claimants, Farwell and Nelsons, have paid the taxes assessed on it; that in 1866 the city passed an ordinance requiring the owners to build a sidewalk across it on Gorham street, which the owners or claimants built in pursuance thereof. These facts establish beyond controversy to my mind that the city in its corporate capacity has never claimed to occupy this property adversely to the owners up to about the time of the commencement of this suit, when they passed the ordinance declaring it a public square, as heretofore stated. Do these facts authorize the court to find that defendant had acquired a right to it by prescription as it claims? I do not think they are sufficient. Dedication may be presumed and established by user for a period of twenty years. But I think such user, in order to constitute a prescription or dedication by prescription from acquiescence in such user, must have been adverse under some real or pretended claim or right, and it must have been exclusive. In the absence of proof to the contrary, I think the presumption is that the user was permissive and not adverse.

This was so laid down by the supreme court of this state in State v. Joyce, 19 Wis. 91; but in the case of Hanson v. Taylor, 23 Wis. 547, a majority of the court overruled that case and held that the use in the ab-

sence of proof to the contrary must be presumed adverse. Chief Justice Dixon dissented, and filed an able and exhaustive opinion, in which he collates and reviews the leading authorities on the question, which I think triumphantly sustain his conclusions.

This case was relied upon by defendant as sustaining the doctrine that its right by prescription might be established by the mere user by the public, without any claim on the part of the city authorities, and without showing it to have been adverse in fact, claiming that it must be presumed to have been adverse. I cannot yield my assent to the rule laid down by the majority of the court in that case, and as it is in conflict with the decisions of the United States supreme court. Irwin v. Dixon, 9 How. [50 U. S.] 10; City of Boston v. Lecraw, 17 How. [58 U. S.] 426. And as it relates to a common law question, and is not under the authority of Yates v. Milwaukee, 10 Wall. [77 U. S.] 497, binding upon the federal courts, I shall follow the decisions of the United States supreme court as controlling in this case.

In the case of City of Boston v. Lecraw, 17 How. [58 U. S.] 426, the court, in speaking of a right of way attempted to be established by dedication or prescription, say: "Till he reclaimed his land the public needed no grant or dedication by him, in order to their enjoyment of the right of navigation over it. The owner was not bound to exercise his right within a given time or forfeit it. A man cannot lose the title to his lands by leaving them in their natural state without improvement, or forfeit them by non-user. See Batz v. Ihrie, 1 Rawle, 218." In this case as in that, the land has remained in its natural state, and if the use of it under such circumstances, in the manner detailed by the witnesses, constitutes a prescriptive right to it on behalf of the city, then the complainants will have lost the title to it "by leaving it in its natural state," and it will be "forfeited" by reason of the "non-user," which the court, in the opinion above cited, hold cannot be done.

The payment of taxes on vacant or unseated lands, the supreme court of New Hampshire have decided to be an act of ownership. Little v. Downing, 37 N. H. 355; Farrar v. Fessenden, 39 N. H. 268; Carr v. Dodge, 40 N. H. 403; Hodgdon v. Shannon, 44 N. H. 572.

In Kirk v. Smith, 9 Wheat. [22 U. S.] 288. Chief Justice Marshall, in commenting upon the operation of the statute of limitations, and the character of the possession of real estate, in order to make it available as the foundation of a right acquired under such statutes, says: "One of the rules which has been recognized in the courts of England, and in all others where the rules established in those courts have been adopted, is that possession to give title must be adverse.

The word is not indeed to be found in the statutes, but the plainest dictates of common justice require that it should be implied. It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive and entirely consistent with the title of another should silently bar that title. Several cases have been decided in this court in which the principle seems to have been considered as generally acknowledged, and in the state of Pennsylvania, particularly, it has been expressly recognized. To allow a different construction would be to make the statute of limitations a statute for the encouragement of fraud; a statute to enable one man to steal the title of another, by professing to hold under it. No laws admit of such a construction." This expresses the rule in very clear and energetic language; but I think none too much so, when considered in reference to lands in their natural state.

In Irwin v. Dixon, supra, the property had been taxed as in this case, and the owner had paid the taxes as in this case, and that fact is mentioned by the court as a circumstance repelling the idea of dedication or prescription. The court further says, "In order to have a use or occupation accomplish this (prescription), it must have been adverse to the owner. 3 Kent, Comm. 444. It must have also been an exclusive use by the public. It must also have been acquiesced in by the owner, and not contested or denied." This case does not come up to these requirements or to any one of them, but, on the contrary, the evidence clearly establishes that it has been claimed as private property by the owner since 1849, when it was laid out as private property, that it has been taxed by the city as private property ever since that time, and that for a portion of the time it has been occupied by parties under the owners for private purposes.

These acts are inconsistent with the idea of a dedication, either express or by implication. They show, to my satisfaction, that the use of this property by the public was not adverse in its character within the meaning of the law, and was not acquiesced in by the owners in such a manner as to bring it within either the doctrine of dedication or prescription. I therefore find that the defendant has no right, title or claim to said property or the possession thereof, and that they have no right to remove the fence erected around the same by the complainants, and direct that a decree be entered according to the prayer of the bill, with costs to be taxed. The complainants' solicitor will prepare a decree according to this opinion, and present it to the judge to be settled according to the usual practice.

For a full citation of the authorities on the question of dedication, consult U. S. v. Illinois Cent. R. Co. [Case No. 15,437].