ERNEST BOERNER *et al.* v. JAMES A. McKILLIP.

1. LAND—*Dedication—Public Use.* No one but the owner of the land can dedicate it to public uses.

2. STREETS AND ALLEYS—*No Dedication—No Estoppel.* An expression of a purpose or intention to dedicate a strip of ground as an alley by a person seeking to become the owner of it, where such purpose is abandoned and renounced before title is obtained, does not constitute either a valid dedication or an estoppel in favor of the purchaser of an adjoining lot, who has notice of such change of purpose, and thereafter, without objection, receives a deed describing his lot by number after an unacknowledged map showing the adjoining parcel of ground to be a lot has been filed for record, and which map is soon thereafter duly acknowledged and recorded.

*Error from Thomas District Court.*

THE facts in this case fully appear from the findings of the trial court, which are as follows:

"1.  On the 14th day of April, 1885, the land upon which the city of Colby, Thomas county, Kansas, now stands was the property of the Union Pacific Railway Company.

"2.  On that date the Colby Town-Site Company was duly incorporated under the laws of the state of Kansas, and that the directors for the first year were D. D. Hoag, D. M. Dunn, S. C. Mills, H. Wallace Miller, M. Donelan, J. B. McGonigal, and Winfield Freeman.  These were also the incorporators.

"3.  The purpose of this incorporation was the location and laying out of a town site, and the subdividing of such town site into lots and blocks and other subdivisions, and streets and alleys, and for the purchase of such property; and this included the right to dedicate portions of the land that they might occupy and use for town-site purposes to the public for its use.

"4.  The said Colby Town-Site Company adopted certain by-laws; that they thereby or therein created an executive board, or committee of three, consisting of the president and two directors, who were to be chosen by the board of directors, whose duty it became, under their by-laws, to determine the selling price of lots, etc., and the terms of payment, and the purchase of materials for the construction of buildings,

purchase of lots, contract for labor, etc.; and they were also constituted an auditing committee for the purpose of auditing the financial concerns of the committee; and they were empowered to do such other things as they were required to, presumably, by the board of directors.

"5. The court further finds, that the persons constituting this Colby Town-Site Company, sometime prior to the incorporation of the same, and in March, 1885, decided to purchase the land on which the town of Colby now stands, and to lay it out into a town; that soon thereafter they entered into negotiations with the Union Pacific Railway Company for the purpose of purchasing the land in question; that they obtained title to this land from the railway company by deed, dated June 9, 1885, and delivered about July 20, 1885; that this deed was recorded July 20, 1885, at 7:20 in the morning, in the office of the register of deeds of Sheridan county, Kansas.

"6. At this time Thomas county, Kansas, was unorganized, and was attached to Sheridan county for judicial purposes.

"7. Prior to the receipt of the said deed of the railway company, said Colby Town-Site Company had surveyed and platted the land described in said deed and conveyed thereby, and they had entered contracts for the sale of lots; such contracts, many of them, were made before the receipt and recording of the said deed.

"8. The original survey was made by one W. C. McGonigal; he made a plat or map of his said survey, showing the streets and alleys, lots and blocks, in the city, or the proposed city, and that the property in dispute was shown in said map to be an alley.

"9. The first plat or map of the town—that is, the one made by W. C. McGonigal, surveyor—was made on or about the 10th of April, 1885; from that time the Colby Town-Site Company assumed to exercise ownership over the land in question, and to contract for the sale of lots in the town site.

"10. The contract by which the Colby Town-Site Company held the premises prior to the deed was simply a verbal contract of purchase.

"11. The court further finds, that on the 10th day of April, 1885, lot nine (9) of block twenty-five (25), in the city of Colby, was bargained to be sold and conveyed by the Colby Town-Site Company to Walker, Youssee & Smith.

"12. On or about that time, D. M. Dunn, who was the president of the Colby Town-Site Company, and J. B. Mc-Gonigal, who was secretary, in connection with the negotiation of said lot, represented to the purchaser thereof, and to others, that the strip of land in dispute was intended to be an alley.

"13. The court further finds, that the said Colby Town-Site Company took the surveyor's map, heretofore referred to, and from it procured to be made a lithographed plat of the town site of Colby; that these were the first lithographed plats of the town site; that these maps showed the strip of land in dispute to be open, and an alley, and not a lot. These lithographed maps were executed in Kansas City, and were conveyed from Kansas City to Colby, and given into the possession of the said Colby Town-Site Company sometime during the month of May.

"14. This map had certain defects and irregularities in it, which caused the Colby Town-Site Company to refuse to accept it as a true map or plat of the town site, which irregularities consisted in the wrong numbering of blocks, and some others; but the court finds that this map showed this specific strip of land to be open and an alley was not an error, and the map was not rejected for that reason.

"15. The court further finds, that after the receipt of the map, and on or about the middle of May, 1885, the said Colby Town-Site Company decided that it would close up this strip of land as an alley and convert it into a lot, as well as certain other supposed alleys on Franklin avenue, in said city; that at a meeting of the executive committee that change was decided upon and made, and that that act became the act of the company, they thereafter recognizing the change, or the act of the executive committee, as a valid act; that the change made by them in closing up of those heretofore alleys included the strip of land in question.

"16. Thereafter the second set of lithographed maps were procured, showing the corrections as to the numbering of the lots and the numbering of the blocks.

"17. The court further finds, that the original lithographed plats that were received by the company, and which they claim to be erroneous, were never destroyed nor returned to the lithographer but were kept in the office of the secretary of the company; that many of those plats were in circulation throughout the town, and were distributed to various portions of the country.

"18. The court finds that J. B. McGonigal, the secretary, was the agent for the sale of the property of the town-site company, or lots in the said town site of Colby, and that, after the order of the executive committee of the company attempting to close up this strip of land as an alley and convert it into a lot, all sales of lots made by him from any plat, or with reference to any plat, were made with reference to the plat showing the closing up of this alley; but that the plats originally made, and that were claimed to be erroneous, were negligently permitted to get into circulation by the company.

"19. The court further finds, that during the months of April and May, 1885, and prior to the date of said meeting and decision of the said executive committee concerning this strip of land, the officers of the said company and its agents were permitted to, and did, hold out to the public that this particular strip of land would be treated as an alley, and was so regarded by them; and that other similar tracts were so regarded by them; in other words, that they represented to the public generally that block 21, and other blocks opening on Franklin avenue and Main street in said city, had alleys running through them from east to west, this strip of land in dispute being one of those alleys.

"20. The court further finds, that on the 20th day of July, 1885, and at the time that the deed from the Union Pacific Railway Company conveying this land to the Colby Town-Site Company was placed on record in Sheridan county, accompanying it was a plat of the town site of Colby, which plat was filed for record on the same day, which plat showed on its face that the particular strip of land in dispute, and other similar strips in the blocks on Main street, were closed, and were lots marked by letters; that said plat at the time of its filing for record was unacknowledged; that soon after its deposit there for record it was returned to the Colby Town-Site Company, to be by it acknowledged, when it was duly acknowledged, and returned to the register of deeds of Sheridan county, and deposited for record on or about the 5th day of August, 1885.

"21. The court further finds, that a record of such plat in the office of the register of deeds of Sheridan county was made by the pasting of a plat on the plat book and not by recording, and that the plat so pasted on the plat book showed this strip of land in dispute to be an open and an alley, while the plat itself as filed for record showed said strip of land to be closed and a lot.

"22. The court further finds, that lot No. 9, in block No. 21, in the city of Colby, being the land of the plaintiff in this action at this time, was conveyed by deed of the said town-site company to Walker, Youssee & Smith on the 31st day of July, 1885.

"23. The court further finds, that the plaintiff in this action obtained title by general conveyance from the said Walker, Youssee & Smith.

"24. The court further finds, that the deed of conveyance from the said town-site company to Walker, Youssee & Smith was made pursuant to an agreement to convey the same lot, made on the 18th day of April, 1885, the consideration for said lot being the erection of the building thereon.

"25. The court further finds, that at the time the executive committee of the said Colby Town-Site Company decided to make the changes in the findings hereinbefore noted, changing this from an alley to a lot, on this particular lot 9 there had been erected a cellar, preparatory to building of a house thereon; and that prior to the building of the house, and immediately after such decision by the executive board, the secretary of the company, J. B. McGonigal, notified Mr. Walker of said decision and change, to which Walker made no objection or assent.

"26. The court finds that the defendants, the Boerner brothers, on December 17, 1887, purchased and procured to be conveyed to them by a warranty deed the title to the strip of land in question in this action, paying therefor the sum of $450, the conveyance being made by James S. Warden and R. S. Newell. Prior to that time, in the year 1886, said Warden & Newell obtained title to the same land by a deed from the Colby Town-Site Company.

"27. The court further finds, that at the time of the institution of this suit the defendants had built a sidewalk across this strip of land, whereby they obstructed the free access to it of the plaintiff.

"28. The court further finds, that the plaintiff's lot No. 9 lies along and immediately north of the strip of land in question.

"29. The court further finds, as to the question of the dedication, that prior to May, 1885, it was the intention of the Colby Town-Site Company to dedicate this strip of land to the public for use as an alley.

"30. The court further finds, that at the time heretofore referred to in these findings, when the executive committee

of the said town-site company decided to change the plat and close the alley, that title to the land in dispute was in the Union Pacific Railway Company, but that it was under contract to convey the same to the Colby Town-Site Company, and, in furtherance of that contract, was conveyed by deed, as herein found; that on this date, which was some time in May, 1885, the said Colby Town-Site Company decided to close up said alley, or intended alley, and make a rededication, and that, in carrying out that intent, they filed for record the plat heretofore referred to, and which was filed for record July 20, 1885, and afterward refiled on the 5th day of August, 1885.

"31. The court further finds, that the plat filed for record on July 20, 1885, and refiled on August 5, 1885, and described in these findings, was never correctly recorded by the register of deeds of Sheridan county, Kansas, until about the 5th of June, 1889.

"32. The court does not find from the evidence that the Colby Town-Site Company, or anyone representing it, procured the record of the plat so filed to be recorded as it was.

"33. The court further finds, that there was no statutory dedication of the town site of Colby prior to the 5th day of August, 1885.".

As conclusions of law, the court finds: "That this was and is an alley; and the judgment of the court is, that the plaintiff should recover in this action."

Thereupon the court rendered a judgment in favor of the plaintiff, granting a perpetual injunction, and defendants below bring the case here for review.

*W. S. Willcoxon*, and *E. A. McMath*, for plaintiffs in error:

The court erred in finding as a conclusion of law from the facts found by the court that the strip of land in controversy was or is an alley. It did not become an alley by virtue of the statutory dedication shown by the findings. The error of the recording officer could not affect the rights of the parties, and we do not understand that the learned judge who tried this case based his decision upon such ground. As authorities upon this question, we cite the following cases:

33 — 52 KAS.

*Poplin v. Mundell,* 27 Kas. 138; *Lee v. Bermingham,* 30 id. 312.

It is claimed on behalf of the plaintiff below, that by reason of certain acts of the company and declarations of its officers, before the company had acquired its title, the strip of land in question became and was dedicated as a public alley, notwithstanding the statutory dedication made as soon as it acquired title. Even if these facts so found by the court were otherwise sufficient to constitute a dedication at common law, we submit that at the time of the acts constituting the alleged dedication the Colby Town-Site Company had no power to dedicate the land in question to the public use. No dedication of land to public use can be made except by the legal owner. The authorities are substantially unanimous to the effect that no one but the owner of an absolute fee can dedicate land to a public use. *Nelson v. City of Madison,* 3 Biss. U. S. 244; *Lee v. Lake,* 14 Mich. 12; *McShane v. City of Moberly,* 79 Mo. 44; *Ward v. Davis,* 3 Sandf. 502–513; *Bushnell v. Scott,* 21 Wis. 457; Ang. High., § 134; 2 Greenl. Ev. 663.

So far as this court has had occasion to pass upon this question, the same doctrine is held, that no one but the legal owner can dedicate streets to the public use. *Brooks v. City of Topeka,* 34 Kas, 277; *Smith v. Smith,* 34 id. 301; *Sullivan v. Davis,* 29 id. 33; *Armstrong v. City of Topeka,* 36 id. 432; *The State v. O'Laughlin,* 19 id. 505.

Even if the Colby Town-Site Company had owned the land, or had possessed the power to dedicate, the acts and declarations of its officers, as found by the court, were wholly insufficient to constitute or complete a dedication to the public. It was entirely competent for the town-site company to revoke the proposed dedication at any time before its acceptance by the public. *Niagara &c. Co. v. Manning,* 66 N. Y. 261; *Village of Lockland v. Smiley,* 26 Ohio St. 94; *Brown v. Manning,* 6 Ohio, 298. The circulation of the lithographed plats was in this case wholly immaterial. If any part of the public was misled thereby, it was that part which

was not in the least concerned in the matter. The defendant in error has no individual rights or equities apart from the rights of the public, by reason of which the land in question can be adjudged to be an alley. He can have no greater rights or equities in the premises than the original grantees of his lot from the town-site company.

To constitute an estoppel, there must be a representation as to some fact actually existing or past and executed, and not as to a present intention or future purpose. Big. Est., §§ 574–576; 6 Wait, Eq. Pr. 682; *Kelly v. Land & Imp. Co.*, 29 Pac. Rep. (Wash.) 1054. As between the parties to this action, the equities of the plaintiffs in error were at least equal if not superior, to any equity which the defendant in error can claim. The plaintiffs in error acquired their title to the land in dispute relying upon the recorded plat which showed this land to be private property. There is no finding that they had any knowledge or notice of any claim on the part of defendant in error, or any other persons, that this was or was claimed to be an alley. It is a general principle that an equitable estoppel can never be invoked against equity, or to defeat equity. *Krutz v. Town Co.*, 20-Kas. 403.

A formal dedication, in specific terms, filed and recorded, cannot be affected by parol proof of the intention of the donors, or by previous declarations or promises made in connection therewith. *Hobson v. Monteith*, 14 Pac. Rep. (Ore.) 742; *Brown v. Manning*, 6 Ohio, 298.

No common-law dedication can be claimed in this case, for the further reason that the general rules governing a common-law dedication do not apply to the dedication of a town site. Gen. Stat. of 1889, ¶¶ 4008–4012.

*H. A. Brant*, and *Jos. A. Gill*, for defendant in error:

Plaintiffs in error base their argument on the false idea that defendant in error is seeking to enjoin on the ground of a statutory dedication. That question is not in the case. The finding of the court below is that there was no statutory dedication of the town site until August 5, 1885.

The findings show a complete dedication of the strip of land in dispute as an alley, and warrant the legal conclusion and judgment of the court below. *Maywood Co. v. Village of Maywood*, 6 N. E. Rep. 866; *Cincinnati v. White*, 6 Pet. 431; *Holding v. Coldspring*, 21 N. Y. 474; *Comm'rs of Franklin Co. v. Lathrop*, 9 Kas. 453; *Comm'rs of Wyandotte Co. v. Presbyterian Church*, 30 id. 620; *Hagaman v. Dittmar*, 24 id. 42; *Brooks v. City of Topeka*, 34 id. 277; Dill. Mun. Corp., 2d. ed., § 503. See, also, *Logansport v. Dunn*, 8 Ind. 378; 5 Am. & Eng. Encyc. of Law, 405, and notes and authorities; 2 Wait's Act. & Def. 712, § 6; *Ross v. Thompson*, 78 Ind. 91; *Moore v. Carson*, 17 Am. Rep. 681; *Town of Leandro v. Lebretton*, 72 Cal. 170.

The claim of plaintiffs in error, that the Colby Town-Site Company was not estopped by reason of its acts and representations concerning the dedication of this alley because said company did not formally obtain title to it by deed until June, 1885, cannot be maintained. Such doctrine, if held to be the law, would pave the way to frauds of gigantic stature. We recognize the general rule, that only the owner of the land can dedicate the same to public use, but this rule can be no stronger than the general rule of conveyance. As well might it be claimed that said company could refuse to recognize its deed made prior to acquirement of title, as to say it is not bound and estopped by acts of dedication made by it prior to such acquirement. See *Easton v. Montgomery*, 90 Cal. 307.

Plaintiffs in error insist that the acts and declarations of the Colby Town-Site Company at the time of the sale of said lot 9 were simply promises, and not representations of existing facts, and that the company and its grantees are not estopped to deny the dedication of the strip in dispute as an alley. To sustain this position, they cite *Kelly v. Land & Imp. Co.*, 29 Pac. Rep. 1054. In that case, the representations were made sometime prior to the sale, and the deed made to Kelly referred to the plat as recorded. The representations in this

case were made at the time of sale, and the deed made contained no reference to any recorded plat.

Defendant in error insists that there is no privity of contract between himself and plaintiffs in error, and that he is litigating, not the question of title as to said alley, but the restraint of plaintiffs in error from obstructing defendant in error in his use of a dedicated public alley. The courts have always held that where a street, alley or public square was being obstructed or used for a purpose different from that for which it was originally dedicated, the remedy of the adjoining lot owner is by injunction. High, Inj., § 528; 6 N. E. Rep. 866; *Comm'rs of Franklin Co. v. Lathrop*, 9 Kas. 453.

In finding 28, it appears that defendant in error owned lot 9, immediately adjoining this alley on the north, and finding 27 shows that plaintiffs in error were obstructing said alley.

The opinion of the court was delivered by

ALLEN, J.: The sole contention in this case is as to whether the piece of land in controversy is the property of the plaintiffs in error or an alley in the town of Colby. It clearly appears from the findings of the court that there was no statutory dedication as an alley, but that the map executed and filed by the town-site company showed the ground in controversy as a lot. It is claimed, however, that there was an actual dedication of the land, which is good at common law. About March, 1885, the persons who afterward formed the Colby Town-Site Company entered into negotiations with the Union Pacific Railway Company for the purchase of the lands which were thereafter platted for the town site of Colby. The company was incorporated on the 14th of April, 1885. The company caused a lithographed plat of the land to be made, and on the 10th of April sold lot 9, in block 21, to Walker, Youssee & Smith, the consideration being the erection of a building thereon; and at the time of this sale the president and secretary of the town-site company represented to the purchasers that the strip of land in controversy was intended to be an alley. The lithographed

map was referred to in making the negotiations.    After
that time, and on about the 10th day of May, the town-
site company changed its plan and decided to make a
lot of this piece of ground instead of an alley, and im-
mediately after that decision notified Mr. Walker of the
intended change, to which he made no objection or assent.
On the 20th day of July, 1885, the town-site company re-
ceived its deed from the railway company; and thereafter,
on the same day, filed for record its unacknowledged plat of
the town site of Colby, showing the land in controversy as a
lot.    Afterward, on the 31st day of July, 1885, it conveyed
lot 9 to Walker, Youssee & Smith, pursuant to the agree-
ment theretofore made.    Can it be said that these facts show
a dedication of this piece of land as an alley?    Most of the
authorities cited by the defendant in error are not applicable
to the case under consideration.    There is no question that a
street may be dedicated to the public in other ways than by
acknowledging and recording a plat.    The fundamental dif-
ficulty in this case is, that at the time it is claimed that the
town-site company dedicated the ground as an alley it had
no title, and was not the owner of it.    It could
not then make a valid dedication.    In the case
of *Hagaman v. Dittmar*, 24 Kas. 42, it was held
that an attempted dedication by a person who was acquiring
a homestead of a portion thereof for a public burial ground,
which was ratified and confirmed after he obtained the patent
to the land, was good, where the public had accepted and con-
tinuously used the ground for burial purposes from year to
year, both before and after the patent was issued.    And in
the case of *City of Cincinnati v. Lessees of White*, 6 Pet. 431,
while the parties laying out the town had only an equitable
title at the time the plat was made, after the legal title was
obtained, they ratified and confirmed the first appropriation
of the ground to public uses.

It will be observed in this case, that not only was there a
want of any ratification of the original plat of the strip as an
alley after the town company obtained the title to the land,

1. Land—dedica-
tion—public
use.

but that within about a month after the contract was made with Walker, Youssee & Smith for the sale of lot 9, and when they had only made a cellar thereon, the town company changed its plan, and notified the purchaser of that change, to which he did not dissent. Afterward, the town company received its title, filed its map, and executed and delivered to Walker, Youssee & Smith a deed to lot 9. This deed must be held to refer to the legally-executed and recorded map, which showed a lot, not an alley, adjacent thereto. It does not appear that any objection was made by Walker, Youssee & Smith to the form of their deed, or to the closing of the alley. It then cannot be claimed in this case that there was any ratification of an intended dedication as an alley after the town company became the owner of the land, but, on the contrary, there was an express renunciation of that purpose, which was brought directly to the knowledge of plaintiff's grantor. In order to sustain a dedication, then, we must first hold that persons having only a

2. Streets and alleys—no dedication—no estoppel. parol contract for the purchase of land may dedicate it to public uses, so as to estop them and their grantees after acquiring a legal title. The authorities hold the reverse of this proposition. In *Lee v. Lake*, 14 Mich. 12, it was held that

"The dedication of premises to public purposes, in a plat acknowledged and recorded by one who did not own the property at the time, cannot have the effect of a conveyance, although he afterwards purchase it; and, in the absence of subsequent facts and circumstances which would constitute an estoppel, he may reclaim the premises."

(See, also, *Nelson v. City of Madison*, 3 Biss. 244; *McShane v. Moberly*, 79 Mo. 41; *Niagara Falls Co. v. Bachman*, 66 N. Y. 261; *Holding v. Cold Springs*, 21 id. 474; *Bushnell v. Scott*, 21 Wis. 457.)

In *Brooks v. City of Topeka*, 34 Kas. 277, it was said:

"No one other than the owner, or some one authorized to act for him, can plat or lay out a town, or an addition thereto, so as to convey to the public for its use the streets and alleys designated on such plat."

In *Smith v. Smith*, 34 Kas. 293, it was said:

" We do not think that a person who is occupying government land, and occupies the same under the preëmption or homestead laws, can dedicate it, or any portion thereof, for a public road, until he has done all that he is required to do to obtain the title to the land under such laws."

In that case it appeared that the person who, it was claimed, had made the dedication afterward acquired full title to the land. See, also, *Armstrong v. City of Topeka*, 36 Kas. 432; *The State v. O'Laughlin*, 19 id. 504.

The findings in this case show an expression of intention on the part of the town company to dedicate, rather than an actual dedication. Both of the parties in this case claim title derived from the Colby Town Company through deeds executed by its officers after the corrected map had been filed for record. The plaintiff below was interested in the lands in controversy only by way of easement appurtenant to the lot he purchased. On the other hand, the defendants below, plaintiffs here, bought the ground and paid $450 therefor, the record showing a perfect title in their grantor. No strong equity urges the relief sought by the plaintiff. On the other hand, the defendants appear to have the better claim. We think the law is clearly with them. The case is reversed, with direction to render judgment on the special findings of fact in favor of defendants for costs.

All the Justices concurring.